FEDERAL TRIAL EXAMINERS CONFERENCE et al. v. RAMSPECK et al.

No. 5171–51.

United States District Court
District of Columbia.
March 4, 1952.
Judgment Affirmed July 16, 1952.

Charles S. Rhyne, Eugene J. Bradley and Eugene F. Mullin, Jr., all of Washington, D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., Ross O'Dongohue, Asst. U. S. Atty., William R. Glendon, Asst. U. S. Atty., John J. McCarthy, Civil Service Comm. and Richard S. Doyle, all of Washington, D. C., for respondent, Bar Assn.

LAWS, Chief Judge.

This is an action against the Civil Service Commission and others brought by a group of hearing examiners appointed pursuant to section 11 of the Administrative Procedure Act, 5 U.S.C.A. § 1010. Plaintiffs seek to have declared invalid certain regulations pertaining to their appointment, promotion, tenure, and compensation. The case has been submitted on motions for summary judgment filed by both plaintiffs and defendants.

Section 11 of the Administrative Procedure Act, referred to in this opinion as the act, provides in pertinent substance as follows:

(a) Subject to the civil service and other laws to the extent not inconsistent with the act, each agency shall appoint as many qualified and competent hearing examiners as may be necessary for proceedings under the act.

(b) Cases shall be assigned to hearing examiners in rotation, so far as practicable.

(c) Examiners are removable by their employing agency only for good cause determined by the Civil Service Commission.

(d) The Civil Service Commission shall prescribe compensation for examiners independently of agency recommendations or ratings, and in accordance with the Classification Act of 1949, except the provisions thereof pertaining to performance ratings.

(e) Agencies temporarily insufficiently staffed may use examiners selected by the Civil Service Commission from other agencies.

(f) The Civil Service Commission is authorized to promulgate rules to implement this section of the act.

The Civil Service regulations under attack were promulgated pursuant to the rule-making authority granted the Commission by section 11 of the act. They provide in substance as follows:

(a) When a vacancy occurs in a hearing examiner position, the agency in which the vacancy exists may choose the means by which it is filled, by promotion of one of the agency's hearing examiners, or by appointment, promotion, transfer, or reassignment of a non-hearing examiner. If the agency elects to fill the vacancy by promoting a hearing examiner, the Civil Service Commission selects the man to be promoted on the basis of competition among all the agency's hearing examiners whom the Commission has determined to be eligible for promotion. To be eligible for promotion, an examiner must have performed for at least 1 year work of a level of difficulty of the grade next below that which is to be filled by promotion. If the agency elects to fill the vacancy with a non-hearing examiner, it submits to the Civil Service Commission the name of the person with whom it desires to fill the position, and if the Commission finds such person qualified, it approves the agency's choice. "Vacancies," as the term is used in these regulations, may come about when the Commission reclassifies a position upward or downward. Civil Service Regulations, section 34.4.

(b) All hearing examiners are classified into civil service salary grades GS–11 through GS–15. Insofar as practicable, examiners are to be assigned in rotation to cases of the level of difficulty and importance that are normally assigned to positions of the salary grades they hold. The Civil Service Commission has published a manual of criteria to aid the agencies in determining which cases are of a level of difficulty and importance appropriate to each of the above five grades. Civil Service Regulations, section 34.10, 34.12; Class Specifications, Hearing Examiner Series, P–935–0.

(c) Agencies are authorized to separate hearing examiners by way of reduction in force in much the same manner as other employees, except that agency performance ratings are not to be considered in determining a hearing examiner's retention preference Civil Service Regulations, sec. 34.-15.

(d) In emergency situations where the needs of the service require it, agencies may make conditional appointments of hearing examiners pending final decision on their eligibility for absolute appointment Civil Service Regulations, sec. 34.3(c).

Plaintiffs' basic contention is that the regulations are in conflict with their parent statute because they destroy the independent status given hearing examiners by section 11 of the act. Defendants urge, first, that plaintiffs have not presented a case or controversy of which the court can take jurisdiction, because section 11 of the act confers no private rights on hearing examiners and because it is not claimed that any agency has in fact jeopardized their independence of judgment or has made imminent threats to do so. On the merits, defendants argue that the challenged regulations are not contrary to their parent statute.

■ There can be no doubt that one of the major purposes of the act was to make hearing examiners independent of pressure from agencies whose cases they pass upon. Lack of such independence was one of the main problems to which the Attorney General's Committee on Administrative Procedure addressed itself in its final report of

738

1941. In an opinion holding that agencies have no authority under section 11 of the act to select hearing examiners for promotion, the Acting Attorney General said the following: "One of the principal purposes of the Administrative Procedure Act was to render examining officers in administrative agencies separate, and genuinely independent of pressure, from the prosecuting officers or others in their agencies who might, directly or indirectly, influence their determinations." Citing S. Rept. 572, 79th Cong. 1st sess., p. 29; H. Rept. 1980, 79th Cong. 2d sess., p. 46; Wong Yang Sung v. McGrath, 339 U.S. 33, 41–45, 70 S.Ct. 445, 94 L.Ed. 616; S.Doc. 8, 77th Cong., 1st sess., p. 56. In a letter from Senator Pat McCarran, to the chairman of the Civil Service Commission, discussing many of the matters which subsequently became the subject of this litigation, the distinguished author of the act said the following concerning the status of hearing examiners: "It was intended that they be very nearly the equivalent of judges even though operating within the system of Federal administrative justice." S.Doc. 82, 82d Cong., 1st sess., p. 9.

■ Bearing in mind the distinctively independent status which section 11 of the act was intended to confer on hearing examiners, the first question is the standing in court, if any, of such examiners in their personal capacity to object to action by the Civil Service Commission which allegedly impairs that status. The court is of opinion that the examiners have such standing. While it may be conceded that the dominant purpose of the act was to guarantee even-handed administrative justice and not to confer benefits upon hearing examiners, it appears that Congress, as a means of attaining this dominant purpose, clothed examiners with the distinctive professional status mentioned above. Such status would not only assure impartiality at the hands of incumbent examiners, but would serve as strong inducement for persons of character and ability to become examiners, and the right to be assured this professional status is not to be disregarded because it is subordinate to another purpose. The court, therefore, is of opinion that the hearing examiners became vested with a property interest in maintaining a distinctive professional status and have standing to seek legal redress against steps which will relegate them to an inferior status.

■ The next question to be decided is whether the alleged threats to that status are merely conjectural, speculative, or remote, as is said by defendants, or whether, as urged by plaintiffs, a genuine controversy over their rights presently exists. In support of their claim that the alleged injury to plaintiffs is conjectural and hypothetical, and consequently that no justiciable controversy exists, defendants rely principally on Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784, and United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. Although those cases clearly support the proposition for which defendants cite them, the court believes the proposition to be inapplicable to the case at bar. In the Ashwander case, it was held that a justiciable controversy could not be founded on announcements of programs, plans, and policies. This is conceded. In the case at bar an affirmative step has been taken beyond that stage. Announcements of programs and policies have matured into official regulations which defendants assert are presently in effect. In the Eccles case, defendant in open court expressly disclaimed any present intention to take the action complained of, whereas in the case at bar the action complained of has occurred and is continuing daily. Plaintiffs challenge the Civil Service Commission's authority to classify them into grades GS–11 through GS–15 and to direct that cases be assigned to them according to an advance estimate of the difficulty and importance of the case as compared with the examiner's grade. Defendant Civil Service Commission has not disavowed any present intent so to classify hearing examiners nor to direct that cases be so assigned to them. On the contrary, plaintiffs are presently in those classifications and there is nothing to indicate that cases are not presently being assigned to them in the manner to which they object. In United Public Workers v.

Mitchell, supra, the action which plaintiffs sought to prevent defendants from taking was conditioned upon plaintiffs' first taking action which they had not taken at the time suit was brought. As indicated above, the action complained of in the case at bar is not contingent on future events, but is an accomplished fact. Where regulations have been adopted and are about to be put into effect, one whose rights may be adversely affected may proceed to protect himself before suffering actual damage. The court is of opinion that a present justiciable controversy exists in favor of plaintiffs.

The legislative plan of section 11 of the act contemplates no distinctions between hearing examiners in any given agency based on the difficulty and importance of the work they perform. Counsel for defendants claims that such classification of hearing examiners is necessitated by the Classification Act of 1949, 5 U.S.C.A. § 1071 et seq., which section 11 makes applicable to hearing examiners' compensation, and that this requirement of the Classification Act is recognized by the provision of section 11 directing rotation of cases *insofar as practicable*. The court is of opinion, however, that the Classification Act simply fixed the formula for determining examiners' compensation if the work assigned to examiners of a particular agency varies in difficulty and importance from that assigned to examiners in another agency. Bearing in mind the purposes of the act, the court is of opinion that the provision requiring rotation "insofar as practicable" relates to exigencies arising in the administration of business, such as illness of examiners, disqualification, unavailability by reason of unforeseen length of hearings, or for other reasons. Senator McCarran in discussing the rotation provision of section 11, said: "it required assignment by rotation, not by classification." (Letter to Chairmen Ramspeck, S.Doc. No. 82, 82d Cong., 1st sess. (p. 9)). It follows the Commission is without authority to classify hearing examiners within any given agency into grades GS-11 through GS-15, and lacking such authority, it is without authority to promulgate regulations governing promotions within an agency from one such grade to another. It also follows that the Commission lacks authority to require rotation of cases within an agency only among examiners of the same grade in accordance with a prior estimate of the difficulty and importance of each case.

The regulations provide for assignment of cases to examiners on the basis of an advance estimate of whether the case to be assigned is "moderately difficult and important," "difficult and important," "unusually difficult and important," "exceedingly difficult and important," or "exceptionally difficult and important." "Moderately difficult and important" cases are said to be characterized largely by the following elements:

(a) No controverted facts or relatively simple contested facts.

(b) No objections to proposals made, authority sought or actions proposed (except in contested proceedings).

(c) Moderately complex legal, economic, financial, or technical questions or matters.

(d) Simple contentions or issues.

(e) Small records.

(f) Narrow effect of decisions.

"Difficult and important" cases are said to be characterized largely by the following elements:

(a) Few controverted or complicated facts.

(b) No or few protestations against proposals made, authority sought, existing rates, practices, or violations.

(c) Fairly complex legal, economic, financial, or technical questions or matters.

(d) Normal contentions or issues.

(e) Relatively small records.

(f) Narrow effect of decisions.

"Unusually difficult and important" cases are said to contain three or more of the following elements:

(a) Many complicated or controverted facts.

(b) Strong protestations against proposals made, authority sought, existing rates, practices, or violations.

(c) Complex legal, technical, economic, or financial questions or matters.

(d) Normal contentions or issues.

(e) Large records.

(f) Fairly wide effect of decisions.

The characteristics of "exceedingly difficult and important" cases are said to be three or more of the following:

(a) Numerous complicated or controverted facts.

(b) Vigorous protestations against proposals made, authority sought, existing rates, practices, or violations.

(c) Extremely complex legal, economic, financial, or technical questions or matters.

(d) Novel contentions or issues.

(e) Extremely large records.

(f) Wide effect of decisions.

Three or more of the following elements are said to characterize "exceptionally difficult and important" cases:

(a) Many highly complicated or controverted facts.

(b) Many vigorous protestations against proposals made, authority sought, existing rules or practices, or violations.

(c) Exceptionally complex legal, economic, financial or technical questions or matters.

(d) Many novel contentions or issues.

(e) Voluminous records.

(f) Very broad effect of decisions.

These general criteria are supplemented with brief summaries of actual cases which are deemed by the Commission to illustrate the difficulty and importance of the class of cases involved.

The vagueness and lack of objectivity in these criteria is apparent from a reading of them. What rational distinction can be drawn between "extremely" complex legal questions and "exceptionally" complex legal questions? How can one measure the vehemence of protestations so as to distinguish "strong" protestations from "vigorous" protestations, especially in advance of the hearing at which the protestations are to be urged? The regulations leave these and many similar questions unanswered. A practical illustration of the uncertainty of these criteria is found in an affidavit of plaintiff Curtis C. Henderson in which he deposes that an audit by the Civil Service Commission of work being performed by examiners in his agency disclosed that four GS–11 examiners were doing work of a level of difficulty and importance equal to GS–13 examiners, and that a GS–12 examiner was doing work of a level of difficulty and importance equal to GS–14 examiners. Although portions of this affidavit are controverted by defendants, the above assertions are not controverted and in at least one instance are corroborated by the affidavit of Paul Pfeiffer, filed on behalf of defendants.

■ Another grave flaw in the regulations is their failure to specify who shall apply these criteria in assigning cases. There can be no question that if the regulations make possible the participation of a litigating agency in selecting or avoiding any trial examiner, they offend the act. It is equally without question that the nebulous and subjective character of the criteria makes it possible for the one who assigns cases to select and avoid particular examiners in making assignments, and that the failure to specify who shall apply the criteria makes possible the participation of litigating agencies in such selection and avoidance.

■ Defendants have argued that the practice in most of the large agencies is to have the assignments made by chief trial examiners independently of the litigating agency. Plaintiffs dispute this assertion and have filed affidavits specifying agencies which have exercised and now exercise a part in making assignments. But whatever the true facts may be, defendants do not meet the objection by asserting that most agencies do not offend. The regulations themselves must be clear and definite in putting the power of assignment beyond the control or suggestion of litigating agencies.

The court does not now pass upon the validity of assigning administrative work to chief examiners. It is sufficient for the purpose of this case to note that neither the act nor the regulations makes provision for a chief examiner who is granted discretion as to assignment of business of agencies.

■ As to the provisions of the regulations authorizing separation of hearing ex-

aminers by reductions in force, the court is of opinion that these, too, are contrary to section 11 of the act. The importance of security of tenure to independence of judgment needs no argument, and was clearly recognized by the Attorney General's Committee on Administrative Procedure in their final report of 1941, which recommended fixed terms of 7 years for examiners. (Final report of Attorney General's Committee on Administrative Procedure, pp. 46–47). The court finds it significant that reduction in force provisions in earlier drafts of legislation governing administrative procedure were omitted from the Administrative Procedure Act as passed, which provides in section 11 that examiners shall be removed *only* for good cause established after hearing and upon the record thereof. (Emphasis added.) See H.R. 184, Seventy-ninth Congress, first session, section 302(5)(c); H.R.1206, Seventy-ninth Congress, first session, section 308(c)(3)(a). Both sides appear to agree that this provision of the act does not comprehend separation by way of reduction in force. But counsel for defendants argues that the status given hearing examiners by section 11 of the act is made subject to the other laws governing Federal employment to the extent not inconsistent therewith, and that reduction in force procedures are thereby made applicable to hearing examiners. Counsel for defendants has also urged the absurdity of having to retain hearing examiners on the payroll with no work for them to do. In view of the provisions of section 11 which authorizes inter-agency "borrowing" of hearing examiners, however, the court cannot say that Congress did not contemplate such possibility and undertake to meet it accordingly.

The remaining provision of the regulations under attack is that which relates to conditional appointments. Plaintiffs claim that the provision enables agencies to hold a club over the heads of new examiners by keeping them in a conditional status if their decisions are unsatisfactory. The court is not impressed by this argument, since it appears that such conditional status is intended chiefly to meet emergency situations where the services of extra hearing examiners are immediately needed, and that an examiner's transfer from conditional to unconditional status is determined upon independent inquiry by the Civil Service Commission. The court also notes that the final report of the Attorney General's Committee on Administrative Procedure, which contains abundant evidence of that body's awareness of the dangers of agency influence, recommended conditional appointments of hearing examiners in certain situations. Final report of Attorney General's Committee on Administrative Procedure, page 48.

Plaintiff's motion for summary judgment will be granted as to section 34.4, 34.10, 34.-12, and 34.15 of the regulations, and denied as to section 34.3(c), concerning conditional appointments. Defendant's motion for summary judgment will be denied except as to section 34.3(c) of the regulations.