**Robert RAMSPECK et al., Appellants, v. FEDERAL TRIAL EXAMINERS CONFERENCE et al., Appellees.**

**No. 11421.**

United States Court of Appeals District of Columbia Circuit.

Argued June 16, 1952.

Decided July 16, 1952.

Writ of Certiorari Granted Oct. 20, 1952. See 73 S.Ct. 93.

William R. Glendon, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., Joseph M. Howard, Asst. U. S. Atty., and John J. McCarthy, Atty. United States Civil Service Commission, Washington, D. C., were on the brief, for appellants. Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., also entered his appearance for appellants.

Charles S. Rhyne, Washington, D. C., with whom Eugene J. Bradley and Eugene

F. Mullin, Jr., Washington, D. C., were on the brief, for appellees.

Richard S. Doyle, Donald C. Beelar, and Edward de Grazia, Washington, D. C., filed a brief in behalf of The Bar Association of the District of Columbia, Inc., as *amicus curiae,* urging affirmance.

Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., filed a brief in behalf of the Interstate Commerce Commission, as *amicus curiae,* urging reversal. Harry L. Underwood, Washington, D. C., also entered his appearance for the Interstate Commerce Commission.

James H. Molloy, *pro se,* filed a memorandum as *amicus curiae,* urging affirmance.

Before WILBUR K. MILLER, PROCTOR and BAZELON, Circuit Judges.

PER CURIAM.

The urgency of a speedy determination of this controversy is recognized by all parties concerned and accounts for the immediate hearing and consideration of the case by this court.

It is the conclusion of the majority that the judgment of the District Court should be affirmed. Their views are in substantial accord with those of Chief Judge Laws of the District Court set forth in his opinion, 104 F.Supp. 734.

Affirmed.

BAZELON, Circuit Judge (dissenting).

By enacting § 11 of the Administrative Procedure Act,[1] Congress took from the agencies certain powers relating to control of tenure and compensation which they had exercised over hearing examiners, and gave them to the Civil Service Commission.[2] The congressional objective was to raise examiners from the level of "mere employees *of an agency*"[3] to a status more consistent with the quasi-judicial duties they are called upon to perform. Pursuant

33. Cf. Radio Station WOW, Inc., v. Federal Communications Comm., 1950, 87 U.S.App.D.C. 226, 184 F.2d 257.

1. 60 Stat. 237, 244, 5 U.S.C.A. § 1010.

2. Hereafter referred to as the Commission.

3. Sen.Rep.No.752, 79th Cong., 1st Sess. (1945) (hereafter cited as Sen.Rep.No. 752), reprinted in Sen.Doc.No.248, 79th Cong., 2d Sess. 185, 215 (1946) (hereafter cited as Legislative History). Emphasis supplied.

to § 11, the Commission issued the regulations under attack here.[4] These provide for (1) the "separation" of hearing examiners by the Commission's standard reduction in force procedures;[5] (2) the classification by the Commission of hearing examiner positions within an agency according to the level of difficulty of cases which examiners filling these positions will handle; (3) the assignment of cases by the agencies to hearing examiners on these various levels, according to the difficulty of the case; and (4) the promotion by the Commission of hearing examiners within an agency from one grade to another. Each of these regulations is held by the trial court[6] and this court to be invalid because it falls outside the scope of the governing statute. I disagree.

The basis for the contention that hearing examiners are insulated from reductions in force is the provision in § 11 of the Administrative Procedure Act that "Examiners shall be removable by the agency in which they are employed *only for good cause* established and determined by the Civil Service Commission * * *." (Emphasis supplied.) It is said that this language evidences a congressional intent to shelter hearing examiners from agency action designed to meet such ordinary exigencies as lack of funds, personnel ceilings and decreases in the amount of work an agency has to handle.[7] "Good cause," under this view, means no more than "a *personal*

shortcoming—malfeasance, incompetence, or some kindred disqualification * * *,"[8] and hearing examiners can be removed "only" for such a reason.

The "[s]trong reason [which] would be essential to support so strange a conclusion"[9] does not exist. Congress put "the entire tradition of the Civil Service Commission * * * to use"[10] when it prescribed a new system of tenure for hearing examiners in § 11. An integral part of that "tradition" is that federal employees are subject to reductions in force.[11] Commission criteria for determining how a reduction in force should be accomplished are now a firmly embedded implementation of that "tradition."[12] It surpasses the bounds of reasonable inference to suppose that Congress, without explicitly saying so, intended to abandon this "tradition" in order to immunize hearing examiners from reductions in force.[13] Where Congress did mean to change certain "traditions" and practices existing at the time the Administrative Procedure Act was passed, it did not flounder in a sea of indirection.[14]

The classification, rotation and promotion regulations are so closely tied that, as a practical matter, they require joint consideration. The classification regulations set up a system of grade classifications for hearing examiners which describe the qualifications of the examiners for each grade and specify the kind of proceedings in which examiners of a given grade shall

4. 5 Code Fed.Regs., Part 34 (Supp.1951). The regulations are reproduced in pertinent part in Brief for Appellants, p. 9.

5. One minor departure from the ordinary regulations is the proviso that "no distinction will be made in subgroups on the basis of a satisfactory or better performance rating as opposed to performance ratings of less than satisfactory." 5 Code Fed.Regs. § 34.15(b) (Supp.1951).

6. The trial judge's opinion appears in the Appendix to Brief for Appellant, p. 102.

7. These are made grounds for reductions in force by 5 Code Fed.Regs. § 20.2(a) (Supp.1951).

8. Brief for Appellees, p. 36.

9. Fass v. Gray, 91 U.S.App.D.C. 28, 197 F.2d 587.

10. Sen.Rep.No.752 in Legislative History, p. 215.

11. Cf. Fass v. Gray, supra; Longfellow v. Gudger, 1926, 57 App.D.C. 50, 16 F.2d 653; Persing v. Daniels, 1915, 43 App.D. C. 470.

12. These regulations appear at 5 Code Fed.Regs., Part 20 (Supp.1951).

13. Appellees concede, of course, that hearing examiners do not have life tenure since Congress itself can specifically reduce their number.

14. For example, the separation of prosecuting and adjudicating functions in § 5(c), 5 U.S.C.A. § 1004(c).

preside.[15] Hearing examiner positions have been allocated by the Commission to the various agencies according to this general plan. For some agencies, the Commission has determined that all the positions allocated shall be at the same grade; in other agencies, it has determined that there shall be as many as five grades.[16] The allocation of several grades to a given agency is based upon the Commission's determination that the cases at which hearing examiners preside in that agency vary considerably in difficulty and importance. The rotation regulations provide that "Insofar as practicable, examiners shall be assigned in rotation to cases *of the level of difficulty and importance that are normally assigned to positions of the salary grade they hold.*"[17] This contemplates that the agency will classify cases before hearing, assigning the more difficult and important ones, for example, to examiners with higher grades. Finally, the promotion regulations authorize and establish a procedure for the promotion of individual hearing examiners by the Commission from one grade to another within the agency. The agency may elect to fill a vacancy by promotion, either from the ranks of its own examiners or from the ranks of other agency personnel. If the agency elects the former group, the Commission alone selects the individual therefrom and the agency is bound by the Commission's choice. If, on the other hand, the agency elects the latter group, it can select the individual therefrom but the Commission may exercise a veto power over such choice.

Briefly stated, the substance of the broadside attack on the regulations is this: § 11 of the Administrative Procedure Act requires that hearing examiners "shall be assigned to cases in rotation so far as practicable * * *." Appellees read this to mean that cases assigned for hearing within an agency shall, in effect, be docketed regardless of their complexity; that a hearing examiner, as he finishes one task, will simply be given whatever case happens to be next in line;[18] that since all the examiners within a given agency will be doing the same work, any difference in grade classification and pay would be not only unfair, but illegal;[19] and that since all the examiners within a given agency will be of the same rank, there will be no occasion for individual promotions within the agency.[20] Underlying this construction of the Act is the notion that classification, rotation according to case difficulty and individual intra-agency promotions will give the agencies control over hearing examiners' compensation and thus destroy that independence from agency control which Congress intended the Administrative Procedure Act to assure hearing examiners.

Appellees' view, which is adopted by the court, goes much farther along the road toward complete examiner independence than Congress itself was willing to travel. In enacting § 11, Congress sought to strike a balance between the need for administrative efficiency and expertise and the need for freeing hearing examiners from dictation or intimidation by the agencies. Accordingly, Congress did not adopt any of the extreme proposals to isolate hearing examiners from the agencies or insulate them completely from expressions of the agencies' views. For example, it rejected the idea of a completely separate Government-wide "pool" of hearing examiners which some experts had favored.[21] And

---

15. Hearing Examiner Series, P–935–O. These rather extensive regulations are made a part of the Transcript of Record, p. 426 et seq.

16. A detailed tabulation of the agencies with the positions allocated is part of the Transcript of Record, p. 798.

17. 5 Code Fed.Regs. § 34.12 (Supp.1951). Emphasis supplied.

18. Appellees would, of course, make allowance for such administrative details as sickness, leave schedules and the like.

19. 63 Stat. 954 (1949), 5 U.S.C.A. § 1071.

20. Under appellees' view, there could be promotions from an agency having lower-grade hearing examiners to one having higher-grade hearing examiners as well as promotions en mass of all hearing examiners within an agency.

21. Sen.Rep.No.752 in Legislative History 215. As early as 1938, Congress held hearings on a proposal for the establishment of a single administrative court which would hear cases for all agencies.

it turned down another proposal for greater autonomy than § 11 provides "chiefly on the ground that it will remove the examiners from real responsibility to the agency charged with the administration of law."[22] Instead, Congress adopted the less extreme proposal of removing from the agencies and giving to the Commission wide powers over the selection, compensation and removal of hearing examiners. This was the means adopted to end "the present situation, in which examiners are mere employees of an agency."[23]

I cannot find in the simple congressional directive of assignment "to cases in rotation so far as practicable * * *" an intent to enact appellees' far-reaching proposals. Freezing all examiners within an agency into one grade and mechanical assignment of cases would go a long way toward dissipating the administrative expertise upon which courts now rely in giving deference to administrative judgments.[24] For usually it is through long experience in a particular field that expertness is acquired. Yet under the appellees' view, specialization by hearing examiners would depend, in large part, upon chance in the assignment of cases. Anomalous results would follow. In the Civil Aeronautics Board, for example, an ex-pilot who has heard nothing but airman certificate cases might suddenly find himself at sea in an intricate corporate control relationship case under § 408 of the Civil Aeronautics Act.[25] And a freshman Interstate Commerce Commission hearing examiner who has dealt only with simple route extensions might be saddled with the great responsibility of a rate-making case with nation-wide implications.

The House Report on the Administrative Procedure Act, in referring to the rotation provision—the focal point of appellees' case—says that "examiners may be permitted to specialize and be assigned mainly to cases for which they have so qualified."[26] And the Senate Report says that "The Commission *would exercise its powers by classifying examiners' positions and,* upon customary examination through its agents, *shift examiners to superior classifications or higher grades as their experience and duties may* require."[27] Taken together, these reports clearly recognize that individual ability and specialization were not to be abandoned as a part of the pattern of expertise so vital to the administrative process.

Moreover, the Attorney General's Committee on Administrative Procedure informed Congress before it passed the Administrative Procedure Act that many agencies employed hearing examiners in different grades and salaries. This was the situation in the Federal Communications Commission, United States Maritime Commission, National Labor Relations Board, Civil Aeronautics Authority and Interstate Commerce Commission, among others. Had Congress meant to change this well-established practice, I do not think it would have left it to conjecture. Such a basic change would only have required a simple direction that "all hearing examiners within an agency shall be of the same grade."

The validity of the promotion regulations necessarily follows from the power to classify hearing examiners and assign cases according to the level of difficulty. Appellees contend that individual promotion of examiners within an agency is forbidden; that the Commission must authorize simultaneous promotion for all agency examiners. Under this view, individual promotion of examiners would be possible only

22. Notes to Senate Judiciary Committee Print, reprinted in Legislative History 42.

23. H.R.Rep.No.1980, 79th Cong., 2d Sess. (1946), reprinted in Legislative History 233, 280.

24. See dissenting opinion in Alberty v. Federal Trade Comm., 86 U.S.App.D.C. 238, 242, 182 F.2d 36, 40, certiorari denied 340 U.S. 818, 71 S.Ct. 49, 95 L.

Ed. 601; Dickinson, Administrative Justice and the Supremacy of Law 71–3 (1927); Landis, The Administrative Process 142–8 (1938).

25. 52 Stat. 973 (1938), 49 U.S.C.A. § 401 et seq.

26. H.R.Rep.No.1980 in Legislative History 280.

27. Sen.Rep.No.752 in Legislative History 215, emphasis supplied.

by obtaining a transfer to another agency having a higher grade classification. Thus, it would create an incentive for examiners to hop-skip from agency to agency in search of promotions. This would threaten administrative expertise in the same way as the uniform classification of hearing examiners within an agency and the mechanical assignment of cases. Testimony before Congress prior to the passage of the Administrative Procedure Act indicated the importance of expertise and that one way of developing a corps of expert hearing examiners in the Interstate Commerce Commission, for example, was to recruit examiners in lower grades and, as they grew in experience and competence, to advance them to higher hearing examiner grades within the agency. Although Congress meant to place restrictions upon the authority of the agencies themselves to effect these promotions, it did not prohibit the Civil Service Commission from making intra-agency promotions.

In sum, I do not think that the regulations contravene § 11 of the Administrative Procedure Act. Whether these regulations are wise or could have been written differently is not a matter for our concern.

Much of the attack upon these regulations is leveled at the possibility they offer for frustrating the purpose of the Administrative Procedure Act to free hearing examiners from agency domination and coercion. That the possibility exists cannot be denied. But it is not so gross as to make the regulations invalid. I think we must assume, moreover, that Congress was amply aware of this possibility but that, in the light of the other considerations discussed above, it was unwilling to write the statute in such manner as to guarantee elimination of this possibility. Congress had a right to rely upon the administrators to keep faith with the spirit of the statute. The record in this case does not reveal that that confidence was misplaced. If individual instances of abuses should arise in the future which threaten to thwart the spirit of the statute, the means are available to put the matter right.

I would reverse the judgment of the District Court.