**Festus J. BROWN**

v.

**John W. MACY, Jr., Individually and as Chairman of the U. S. Civil Service Commission, et al.**

**Civ. A. No. 13231.**

United States District Court
E. D. Louisiana.

Oct. 14, 1963.

Jack N. Rogers, Baton Rouge, La., for plaintiff.

Peter E. Duffy, Asst. U. S. Atty., New Orleans, La., for defendants.

FRANK B. ELLIS, District Judge.

Mr. Festus J. Brown was a United States Customs Inspector. By letter dated July 13, 1962,[1] the U. S. Civil Service Commission charged Mr. Brown with violating the Hatch Act. This letter specifically alleged that Mr. Brown took an active part in a political campaign when, in April 1962, through and by means of his position as a member of the Louisiana American Legion Committee on Un-American activities, he caused to be printed and distributed 250 copies of a flyer entitled "As Legionnaires, We Have A Right to Know the Answers" politically attacking Louisiana's Democratic Congressman Hale Boggs. Following a hearing conducted on October 9, 1962, the examiner determined that Mr. Brown committed the violations as charged, but because of mitigating circumstances recommended only a 90-day suspension. The Commission reviewed the record, refused to agree that mitigating circumstances were present, and on February 6, 1963, ordered Mr. Brown's permanent removal from office. Following his dismissal this action was commenced seeking a declaratory judgment that complainant was illegally removed from his official position and further praying that he be restored to full duty at full pay and with all past due pay and allowances paid to him. The matter is now before this court on defendant's motion for summary judgment.

Both parties agree that this court has no power to review the merits of the case *de novo*,[2] however, plaintiff's contentions require a careful examination of the record in order to determine whether procedural rights guaranteed under the Veterans' Preference Act [3] were denied plaintiff in the Civil Service Commission proceedings. The Veterans' Preference Act Guarantees that:

"No permanent or indefinite preference eligible * * * shall be discharged * * * except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge * * * is sought shall have at least thirty days' advance written notice * * * stating any and all reasons, specifically and in detail * * * a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer * * * the right of appeal to the Civil Service Commission * * * Provided, that such preference eligible shall have the right to make a personal appearance * * * in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission * * *." 5 U.S.C.A. § 863.

When procedures have been complied with, discharge for political activities forbidden by the Hatch Act is discharge for such "cause as will promote the efficiency of the service" under the above quoted Act. Flanagan v. Young, 97 U.S. App.D.C. 119, 228 F.2d 466 (1955).

Plaintiff's contentions allege denial of the right to cross examine witnesses at

1. This letter is hereinafter occasionally referred to as the letter of July 13, 1962.

2. Statutory language does not require such review. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Davis, Administrative Law Treatise, § 29.03. On the other hand the Supreme Court has developed a common law in regards expanding the right to review *de novo* beyond statutory bounds. These areas encompass (a) where citizenship is asserted in a deportation proceeding, Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, (b) where jurisdictional or fundamental facts necessary to invoke the statutory scheme are at issue, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, and (c) where a legislative action of the agency is asserted to have infringed Constitutional rights, Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S. Ct. 527, 64 L.Ed. 908. Even if these areas still require review *de novo* (see Davis, supra, § 29.08 and § 29.09), none of those questions is presented in the case at bar.

3. Veterans' Preference Act of 1944, 58 Stat. 387, 5 U.S.C.A. § 851–869.

the hearing and gross enlargement of the specific charges which amounted to proof of guilt only by association. This court is of the opinion that neither contention warrants granting of the relief sought, and hereby grants defendant's motion for summary judgment.

## I. Denial of the Right to Cross-Examine

Prior to filing the formal charges against Mr. Brown, and pursuant to its regulations, the Civil Service Commission conducted an investigation of the political activity allegations which had been brought to its attention. Mr. Malcolm P. Littlefield, a trial attorney with the office of the General Counsel, U. S. Civil Service Commission, was dispatched to the New Orleans area. During the course of his investigation the employee was afforded an opportunity to furnish the names of witnesses he wished to have interviewed.[4] Late in June, 1962, Mr. Littlefield personally interviewed Mr. Hubert Badeaux, chairman of the Stuart McClendon Campaign Committee, Mr. James N. Brauner, Commander, American Legion Post No. 307, New Orleans, La., and Mr. Merrick Swords, Commander, First District, American Legion, Louisiana. At a later date Mr. Littlefield signed and swore to affidavits reciting the results of these three interviews, and at the hearing he testified further as to what was told him in the interviews. By the acceptance into the record of the affidavits and the hearsay testimony, plaintiff contends that he has been effectively denied the right to cross-examine witnesses, even though plaintiff did in fact cross examine Mr. Littlefield and had the opportunity to request the appearance at the hearing of the three gentlemen whose testimony was introduced into the record as hearsay, and even though plaintiff received copies of the affidavits prior to the hearing.

The plaintiff does not contend that he was denied the right to cross examine the witnesses who appeared before the hearing, but strongly contends that through the artifice of affidavits and hearsay testimony he was effectively denied the right to cross examine the persons whose testimony was so admitted. As set out above, the Veterans' Preference Act provides "[t]hat such preference eligible shall have the right to make a personal appearance * * * in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission."[5] Thus, reference must be made to the Civil Service Commission rules and regulations to determine whether plaintiff has been denied any procedural safeguards.

Civil Service Commission regulations in part 4 cover procedures in political activity cases. Specifically in point is 5 C.F.R. § 4.205(c):

"The employee may be represented by counsel of his own choosing. The employee and the Counsel of the Commission *may* produce witnesses, who shall be subject to cross examination. Each shall be responsible for securing the attendance of his witnesses. (There is no power of subpoena in these cases)." (Emphasis supplied)

The absence of the subpoena power, coupled with the permissive presentation of witnesses leads to the conclusion that the right of cross examination is restricted in this type of hearing to those witnesses who personally appear at the hearing. The record indicates that at the hearing plaintiff was not only accorded the right to cross examine the witnesses, but did in fact cross examine all five government witnesses. There is little doubt then that the letter of the regulation was observed.

Plaintiff's contention goes a step farther, though. He alleges that the manner

4. Code of Federal Regulations, Title 5, § 4.201 Investigation. "(b) During the course of the investigation, the employee shall be afforded an opportunity to make a statement concerning the substance of

political activity disclosed by the investigation and to furnish the names of witnesses he wishes to have interviewed."

5. 5 U.S.C.A. § 863.

in which the regulation was applied effectively denied him his constitutional right to cross examine witnesses. Professor Kenneth Culp Davis, in his authoritative treatise on Administrative law addressed himself to this critical problem of admissable hearsay denying cross examination. Citing Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949), Professor Davis indicates that a hearing examiner's restriction of cross examination where an expert is testifying is an improper denial of the right, but points out that at the other pole is the ordinary instance of hearsay. "Reliance upon hearsay, which we have seen is clearly permissable, obviously prevents cross examination of declarants who are unavailable." Davis, Administrative Law Treatise, § 14.15 (1958). Thus, whenever hearsay evidence is admissable in an administrative agency proceeding, the *quid pro quo* is the restriction of the right to cross examine. Only when the restriction prevents a full and true disclosure of the facts, as in Reilly v. Pinkus, supra, must the decision be altered. There is no indication here that all the facts were not truly disclosed.

Permeating this discussion is a recognition of the basic distinctions and interrelationships between the judicial and the administrative processes. In short, the volume of work facing an agency such as the Civil Service Commission permits the relaxation of certain evidentiary rules in their hearings even though those rules would be stringently enforced in jury trials. This concession is granted usually on condition that the rules and regulations be promulgated in the Code of Federal Regulations. An essential element then is notice to the affected party. Ample notice as to the procedure for securing the attendance of witnesses and the scope of cross examination is provided in 5 C.F.R. § 4.205(c), cited above, as well as

in the letter of July 13, 1962, stating the charges against Mr. Brown.

Furthermore, nowhere in the voluminous hearing record is there any indication as to what the missing witnesses would have testified had they been present at the hearing. On oral argument of the motion at bar plaintiff's counsel admitted that they had not requested the missing witnesses to appear at the hearing for fear that their testimony would be adverse to Mr. Brown's interests. Therefore, because the letter of a reasonable regulation was adhered to [6], and since it was the plaintiff here who had originally decided to not exert his own procedural rights, and now fails to indicate how the absence of the witnesses prejudiced his rights, this court fails to perceive any irregularities in regards the admission of this hearsay at the agency hearing.

## II. Enlargement of the Charges

The Veterans' Preference Act stipulates that any preference eligible whose suspension or discharge is being sought shall have written notice "stating any and all reasons, specifically and in detail, for any such proposed action.[7] Plaintiff alleges in his petition that the hearing examiner accepted into the record evidence "which amounted to a gross enlargement of the highly specific charges previously filed against complainant which denied him the right to properly prepare his defense and which amounted to proof of guilt by association only."

The charges initiating the action which led to plaintiff's dismissal were contained in a letter addressed to Mr. Brown from Mr. L. V. Meloy, General Counsel for the Civil Service Commission, dated July 13, 1962. The three charges contained therein relate to the preparation and distribution of approximately 250 single sheet flyers entitled "As Legionnaires We Have a Right to Know the Answers." The

6. A similar Civil Service Commission regulation requiring the parties to arrange for the appearance of witnesses without subpoena power was considered reasonable in Williams v. Zuckert, 111 U.S.App. D.C. 294, 296 F.2d 416 (1961), cert.

granted and case remanded to the District Court for different reasons 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136.

7. 5 U.S.C.A. § 863.

individual charges state that through the preparation and distribution of this flyer Mr. Brown politically attacked Democratic Congressman Hale Boggs by (a) aiding the candidacy for United States Congressman of Stuart A. McClendon, (b) attempting to defeat Congressman Hale Boggs in his candidacy for re-election,[8] and (c) publishing the flyer, which with minor modification was reproduced and distributed as a political-action sheet by the Conservative Political Association of New Orleans, an organization which politically backed and financially supported Stuart A. McClendon. These charges are specific and clearly conform to the mandate of the Veterans' Preference Act, 5 U.S.C.A. § 863.

The overall import of the charges lodged against Mr. Brown allege that he took an active part in a political campaign as is strictly forbidden by the Hatch Political Activities Act, 5 U.S.C.A. § 118i [9]. At the hearing two areas of inquiry prompted objections on grounds that the admissability of such testimony would amount to an enlargement of the specific charges and lead to a finding that Mr. Brown was guilty merely by association with persons admittedly active in political campaigning. One area of questioning involved Mr. Brown's association with Mr. Guy Bannister, a self-acknowledged foe of Congressman Hale Boggs. The other area centered around the activities of Mrs. Victoria Brown, plaintiff's wife. Mrs. Brown was described as a member of the McClendon Campaign Committee. The crux of the plaintiff's contention now is that the admission of such evidence resulted in his being found guilty by indirection, a charge not included in the letter of July 13, 1962.

The primary consideration here is whether the evidence in question can be properly characterized as constituting an additional charge of violating the Hatch Act by partaking in a political campaign through indirection or association. At the hearing counsel for Mr. Brown stated the position and approach of their defense in a brief opening statement, here set out in full:

"May it please the Court, briefly our position in the matter is simply this: That the intent of Mr. Brown and what he did do is a vital element in determining whether or not he violated the Hatch Act. We intend to show the Court that Mr. Brown's intent and what he actually in fact did do, was not partisan political action against T. Hale Boggs, as defined in the Hatch Act, but was instead, a legitimate legal comment and criticism which he is allowed under the Hatch Act; and further, a purely and simply valid exercise of his sworn responsibilities as a State Official of the American Legion.[10]

Clearly, then, in this case proof of intent was necessary and the defendant there so perceived the charges. Furthermore, Mr. Brown denied knowledge of a politi-

8. The letter of July 13, 1962 reads in part: "That while employed as set forth above, you took an active part in political campaigns, in that: * * * You prepared and caused to be distributed over your name to members of the American Legion in attendance at the First District Conference of the American Legion, Department of Louisiana, held in New Orleans, Louisiana, approximately 250 copies of a single-sheet legal size paper entitled "As Legionnaires We Have a Right to Know the Answers", dated April 23, 1962, politically attacking Democratic Congressman Hale Boggs, in his candidacy for re-election to that position in the forthcoming Democratic Primary Election to be held on July 28, 1962, in the 2nd Congressional District, State of Louisiana." The other charges are equally specific and detailed.

9. The Hatch Act provides: "No officer or employee in the executive branch of the Federal Government, or any agency or department thereof, shall take any active part in political management or in political campaigns."

10. Transcript of U. S. Civil Service Commission hearing October 9, 1962, in the matter of Festus J. Brown, Docket No. 1655 pp. 7–8.

cal campaign being in progress when he distributed the flyer.[11]

In order to prove Mr. Brown's intent to violate the Hatch Act it befell the government the duty to show by sufficient objective circumstances what Mr. Brown's subjective motives were. Additionally, it became necessary to show that Mr. Brown was aware a political campaign was in progress when he caused the flyer to be circulated. To properly characterize the questioned testimony and see how it fits into the pattern of proof certain dates are important. Of primary importance is April 24, 1962, the date the flyers were distributed. The testimony indicates that the material contained in the flyer was culled from a report supplied by Mr. Guy Bannister and received by Mr. Brown on either March 9th or 11th, 1962. Further evidence indicated that the McClendon Campaign Committee had been organized about the middle of March, 1962, and that a flyer listing Mrs. Victoria Brown as a committee member had been distributed around April 1, 1962. All of this evidence relates to incidents prior to the distribution of the April 24, 1962 flyer.

The inference to be drawn from these facts is that Mr. Brown either was, or reasonably should have been, aware that a political campaign was in progress, and that his actions constituted participation in that campaign. The written decision of the Commissioners expressly states their conclusion and the reasons supporting the decision:

"The principal factor which persuades us that the respondent was neither duped nor otherwise deceived into taking an unwitting part in the campaign is the active politically partisan role of other persons closely associated with him. These include Mr. Guy Bannister, author of the

Bannister report, who frankly testified concerning his political animus toward Congressman Boggs; Mrs. Victoria Brown, the respondent's wife, who on April 1, 1962, was a member of the McClendon Campaign Committee (see Gov't Ex. 13); Mr. William W. Irvin, who, as of April 1, 1962, was likewise a member of the McClendon Campaign Committee (Finding 11), and whom Brown consulted during the preparation of the document 'As Legionnaires We Have a Right to Know the Answers.'

"The foregoing facts * * * establish beyond any doubt that Brown had personal knowledge of the candidacy of Stuart A. McClendon before distribution of the document 'As Legionnaires We Have a Right to Know the Answers' on April 24, 1962. We do not believe that fortuitous circumstances can explain the related series of events which transpired between the time the respondent received the Bannister Report and the distribution of the excerpted document. Rather the pattern of events supports the view that Mr. Brown assigned himself a principal role in a plan, in cooperation with others, designed to accomplish the election of Stuart A. McClendon and to discredit Congressman Boggs; that his acts were deliberate, not unwitting; premeditated, not accidental." [12]

The decision of the Commissioners characterized the testimony in question as relating directly to Mr. Brown's intent and knowledge, and not to any guilt by association. So characterized, the questioned testimony was relevant to the charges contained in the letter of July 13, 1962, especially when considered in light of the approach employed by Mr.

11. Id. at 129. "THE WITNESS: I am only aware that considerable information was going around that Mr. McClendon would possibly be a candidate; that there were people interested in his candidacy; interested in getting him to run. I had no official announcement. I knew not whether or not the man was going to run or not."

12. Decision of the Commissioners, U. S. Civil Service Commission, In the matter of Festus J. Brown, Docket No. 1655, approved January 29, 1963.

Brown's counsel at the hearing in his defense. Summary judgment is proper. Dilatush v. Wilson, 99 U.S.App.D.C. 224, 239 F.2d 44 (1956), cert. den. 353 U.S. 917, 77 S.Ct. 663, 1 L.Ed.2d 663.

## III. Conclusion

Concededly, this court cannot and does not intend to pry into the merits of the Civil Service Commission decision. Ellis v. Meuller, 108 U.S.App.D.C. 174, 280 F.2d 722 (1960). However, because of the flyer's ultimately wide dissemination and the considerable publicity attendant thereto it is considered within the realm of fair comment to consider the charges in the flyer separate and apart from the merits of Mr. Brown's dismissal.

While the First Amendment grants to each American the right to free speech it also carries with it a solemn obligation to wisely use the great privilege accorded each of us. The right clearly has limitations for it rebukes those who would use its protection privileges as a shield behind which to launch campaigns of vituperation and abuse.

Any attempt to destroy character by resurrecting and repeating an ancient libel holds up for scorn the libellant and his consorts as their dirty linen is illuminated by the piercing light of the First Amendment. By direct statement, implication and innuendo the "flyer" involved here sought to soil the campaign efforts of Congressman Boggs when he was seeking nomination to the United States Congress for the eleventh time. Many of the charges are hoary with age, having originally been circulated some twenty-five years ago and thoroughly debunked immediately following their inception. These statements, made at a time when Congressman Boggs was in his political infancy, evidence an irresponsible and unsuccessful effort to taint the character and standing of a man who has since proven himself to be one of Louisiana's outstanding statesmen.

Our forefathers, as architects of the Bill of Rights, would indeed by gratified to know that an able leadership courageously marches on in the service of our country within the framework of our Constitution, hurt but never retarded by the invidious ink of the extremists who would fence around their calumny with holiness.

It is ordered that defendant's motion for Summary Judgment be and the same is hereby granted.