**DEMOCRATIC STATE CENTRAL COMMITTEE FOR MONTGOMERY COUNTY, MARYLAND, George Norman, Levon A. Terzian, H. Robert Borden, Sr., and William R. Thomas, III,**

v.

**Ludwig J. ANDOLSEK and Robert E. Hampton, Members, and John W. Macy, Jr., Chairman, United States Civil Service Commission.**

Civ. No. 16460.

United States District Court
D. Maryland.
Jan. 25, 1966.

Alfred L. Scanlan, Bethesda, Md. (Ralph J. Moore, Jr., and Shea & Gardner, Washington, D. C., and Francis X. Gallagher, Baltimore, Md., on the brief), for plaintiffs.

Thomas J. Kenney, U. S. Atty., Baltimore, Md. (John W. Douglas, Asst. Atty. Gen., Harland F. Leathers, William P. Arnold and Leslie A. Nicholson, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendants.

THOMSEN, Chief Judge.

This action, brought by the Democratic State Central Committee for Montgomery County and by four employees of the federal government who reside in that County, attacks the regulation of the Civil Service Commission which grants to federal employees residing in Montgomery County a limited exemption from the prohibitions against political activities by federal employees contained in section 9 of the Hatch Act, 5 U.S.C.A. § 118i. The regulation in question, 5 C.F.R. 733.301, was adopted pursuant to section 16 of the Act, 5 U.S. C.A. § 118m, and has been amended from time to time to add additional municipalities and governmental subdivisions to the list of those whose residents are entitled to the limited exemption.[1]

---

1. The Hatch Act, 53 Stat. 1148, as amended July 19, 1940, 54 Stat. 767, 5 U.S.C.A. §§ 118i, 118m and 118n (1950), provides in pertinent part as follows:

§ 118i. [Section 9] Executive employees; use of official authority; political activity; penalties; reports to Congress

(a) It shall be unlawful for any person employed in the executive branch of the Federal Government, or any agency or department thereof, to use his official authority or influence for the purpose of interfering with an election or affecting the result thereof. No officer or employee in the executive branch of the Federal Government, or any agency or department thereof, shall take any active part in political management or in political campaigns. * * *

\* \* \* \* \* \* \*

§ 118m. [Section 16] Political campaigns in localities where majority of voters are Government employees

Whenever the United States Civil Service Commission determines that, by reason of special or unusual circumstances which exist in any municipality or other political subdivision, in the immediate vicinity of the National Capital in the States of Maryland and Virginia or in municipalities the majority of whose voters are employed by the Government of the United States, it is in the domestic interest of persons to whom the provisions of this subchapter are applicable, and who reside in such municipality or political subdivision, to permit such persons to take an active part in political management or in political campaigns involving such municipality or political subdivision, the Commission is authorized to promulgate regulations permitting such persons to take an active part in such political management and political campaigns to the extent the Commission deems to be in the domestic interest of such persons.

§ 118n. [Section 18] Elections not specifically identified with National or State issues or political parties

Nothing in the second sentence of section 118i (a) or in the second sentence of section 118k (a) of this title shall be construed to prevent or prohibit any person subject to the provisions of this Act from engaging in any political activity (1) in connection with any election and the preceding campaign if none of the candidates is to be nominated or elected at such election as representing a party any of whose candidates for presidential elector received votes in the last preceding election at which presidential electors were selected, or (2) in connection with any question which is not specifically identified with any National or State political party. For the purposes of this section, questions relating to constitutional amendments, referendums, approval of municipal ordinances, and others of a similar character, shall not be deemed to be specifically identified with any National or State political party.

The Civil Service Commission Regulation, 5 C.F.R. 733.301 (1964), provides in pertinent part as follows:

§ 733.301 Grant of privilege to residents of certain localities.

(a) Under section 16 of the Act the Commission has excepted employee residents of certain municipalities and

Plaintiffs complain because the regulation, section 733.301, while permitting certain political activities by federal employees in Montgomery County, forbids the partisan political activities specified in paragraphs (a) (2) and (3) thereof. Plaintiffs desire to engage in those prohibited activities, and contend: (1) that the restrictions contained in those paragraphs are not authorized by the statute; (2) that the restrictions are discriminatory and deprive plaintiffs and other federal employees similarly situated of rights under the First, Fifth, Ninth and Tenth Amendments, and that if they are authorized by the statute, the statute is to that extent unconstitutional; and (3) that the Commission failed to make a factual determination required by the statute. Plaintiffs seek a declaratory judgment and injunctive relief.

Defendants contend (1) that plaintiffs lack standing to sue; (2) that the complaint does not present a justiciable controversy, because the action complained of is committed to the discretion of the Commission and is not judicially reviewable; (3) that the actions complained of are in accordance with the governing statutory and constitutional requirements; and (4) that the individual plaintiffs have not exhausted their administrative remedies and have an adequate remedy at law.

Plaintiffs have filed a motion for summary judgment. Defendants have filed a motion to dismiss, which the parties have agreed should be treated as a motion for summary judgment insofar as it may require consideration of exhibits filed by defendants. The parties further agreed at a pretrial conference that there are no contested issues of fact and that it is a proper case for final disposition on the motions.

## I

Section 9 of the Hatch Act, 53 Stat. 1148, as amended, 5 U.S.C.A. § 118i, prohibits officers and employees in the Executive Branch of the Federal Government from "[taking] any active part in political management or in political campaigns." [2]

Section 16 of the Act, 54 Stat. 767, 5 U.S.C.A. § 118m, adopted in 1940, authorizes the Civil Service Commission to promulgate regulations permitting federal employees residing in communities around the National Capital to take an active part in political management or political campaigns involving their municipalities or political subdivisions "to the extent the Commission deems to be in the domestic interest of such persons." [3]

The Commission has exercised its authority under the provisions of section

political subdivisions from the prohibitions of section 9 of the Act, subject to the following conditions:

(1) An employee shall not neglect his official duties or engage in nonlocal partisan political activities.

(2) An employee shall not run for local office as a candidate representing a political party or become involved in political management in connection with the campaign of a party candidate for office.

(3) An employee who is a candidate for local elective office shall run as an independent candidate.

(4) and (5) [Not material here]

(b) The exceptions referred to in paragraph (a) of this section are effective for employee residents in each municipality and political subdivision named in this paragraph from and after the date specified.

In Maryland

Annapolis (May 16, 1941).
Capital Heights (Nov. 12, 1940) [and 38 others added on various dates].
Montgomery County (Apr. 30, 1964).
[See 29 F.R. 6061, May 8, 1964]

In Virginia

Alexandria (Apr. 15, 1941).
Arlington County (Sept. 9, 1940) [and 7 others added on various dates].

Other Municipalities

Bremerton, Wash. (Feb. 27, 1946 [and 9 others in Alaska, Arizona, California, Georgia, Tennessee and Washington].

2. See note 1, above. The Hatch Act, adopted in 1939, followed a long series of statutes and executive orders dealing with restrictions upon political activity by certain federal employees. United Public Workers v. Mitchell, 330 U.S. 75, 79, 67 S.Ct. 556, 91 L.Ed. 754, n. 4 (1947).

3. See note 1, above.

16 by granting a limited exemption to employees residing in 49 municipalities and political subdivisions in Maryland and Virginia near Washington, D. C., and in ten municipalities and political subdivisions in other States. 5 C.F.R. 733.301.[4] However, the Commission has uniformly and without exception restricted this exemption to independent non-partisan activities of a purely local nature. The restrictions are set out in several subparagraphs of section 733.301 (a). See note 1, above. The two in question here are:

"(2) An employee shall not run for local office as a candidate representing a political party or become involved in political management in connection with the campaign of a party candidate for office.

"(3) An employee who is a candidate for local elective office shall run as an independent candidate."

Until 1964 Montgomery County, Maryland, had not been included among the political subdivisions with respect to which an exemption had been granted. Early in 1964 however, the Commission received and considered two separate requests that federal employees residing in Montgomery County be exempted from the provisions of section 9 of the Act. The first request (by Docter) called for an exemption which would have permitted residents of Montgomery County to participate in county elections as *partisan* candidates. The second request (by Salerno, et al.) was for permission to participate in local elections at the county level but only on a *non-partisan* basis. The Commission held that its regulations permit participation on a non-partisan basis only; it therefore denied the first (Docter) request and granted the second (Salerno request) on April 30, 1964. The exemption so granted to federal employees residing in Montgomery County was and is subject to the same conditions that the Commission has uniformly prescribed, including the conditions set out in section 733.301(a) (2) and (3), quoted above.[5]

On January 5, 1965, a number of the citizens who had participated in the successful Salerno request announced the formation of a "new political party" in

---

4. See note 1, above.

5. The formal action granting the exemption was taken by the Commission on April 30, 1964, on the recommendation of its General Counsel. The minutes of the proceedings of the Commission of May 5, 1964, show the denial of Docter's request and the granting of the request of Salerno, et al., with the reasons therefor and a note that the action had been completed on April 30, 1964.

The action of the Commission adding Montgomery County to the list of municipalities and political subdivisions contained in section 733.301(b) was reported in 29 F.R. 6061, May 8, 1964.

Meanwhile, the Commission had written a letter to Salerno, dated May 4, 1964, which recited and explained the action taken by the Commission. That letter contained the following paragraphs:

"The Commission has approved your request for the extension of the privilege of Section 16 of the Hatch Act to Federal employees residing in Montgomery County, Maryland. Such employees may therefore run as, or actively campaign in behalf of, independent candidates for the county-wide elective offices of Montgomery County, Maryland, in the general elections held for such offices. They may not become candidates or otherwise participate in a primary election in the county and they are prohibited, either as candidates or as workers in the county elections, from conducting or taking part in any political campaign in a partisan manner. Although the terms under which Federal employees in Montgomery County may exercise the privileges of Section 16 therefore preclude them from taking part in party primaries, the Commission has been advised by the Attorney General of Maryland that the election laws of that State permit persons to qualify by petition as independent candidates for county elective offices.

"The privileges of Section 16 of the Hatch Act are extended to the Federal employee residents of Montgomery County, Maryland, subject to the following restrictions and limitations of the Commission's regulations: * * *"

The letter then quoted Regulations section 733.301(a) (1), (2), (3) and (4). See note 1, above.

Montgomery County, to be known as the "Non-Partisans for a Better Montgomery County." Shortly thereafter, on March 2, 1965, plaintiffs herein filed a petition with the Commission, seeking the elimination of the restrictions contained in section 733.301(a) (2) and (3), quoted above and in note 1, and other modifications of the Commission's Rules and Regulations, in order to permit the individual plaintiffs and other federal employees similarly situated to participate in political campaigns for election to local offices in Montgomery County as members or under the auspices of the political party of their choice, including plaintiff Democratic State Central Committee,[6] and to permit such employees to support actively and openly any candidate running for local office, whether such candidate runs as a Democrat, Republican, Socialist, or "Non-Partisan".

It was alleged in that petition and in the complaint herein that the individual plaintiffs are employed in the Classified Civil Service and are members of the Democratic party; that plaintiff George Norman intends to file in the 1966 Democratic primary election to secure that party's nomination as a candidate for the Montgomery County Council; and that the other individual plaintiffs intend to campaign actively and publicly in support of Democratic party candidates. The petition and the complaint herein[7] alleged the formation of the new political party and alleged that the new party would function locally as "an orthodox or traditional political party," i. e., would put up candidates in partisan elections for local office, would debate with the leaders and candidates of both the Democratic and Republican parties in Mont-

gomery County, and would publicly criticize the local policies and county leadership of those two political parties. The petition requested the Commission to give plaintiffs and other interested persons the opportunity to appear before it in a public rule-making hearing pursuant to section 4(b) of the Administrative Procedure Act (60 Stat. 238, 5 U.S.C.A. § 1003(b)), on the issues presented by the petition. In the brief filed in support of their petition, plaintiffs made substantially the same contentions that they are making in this suit. On March 22, 1965, the plaintiffs supplemented their petition, proposing amendments to section 733.301 which, if adopted, would have permitted federal employees to engage in local campaigns through the political party of their choice. Plaintiffs contend that the amendments they proposed would have guaranteed that such participation would not lead to the involvement of such employees in state or national partisan politics.

On April 6, 1965, the Commission denied the request for a hearing and the request for an amendment to section 733.301 or other relief. The grounds for the Commission's decisions were stated as follows:

"In the interest of preserving and strengthening the career service the Commission has in granting privileges under § 16 of the Hatch Act, consistently held to the principle that federal officers and employees may be candidates for a local elective office in a partisan election but must run as independent candidates. From the very beginning of the civil service system partisan political ac-

---

**6.** Plaintiff, Democratic State Central Committee for Montgomery County, Maryland, is a semi-autonomous, constituent organization of the Democratic State Central Committee for Maryland, an unincorporated Maryland association, all the members of which are residents of Maryland. The State Committee as a whole possesses authority bestowed by Maryland statutes in regard to matters pertaining to the organization, maintenance, conduct, affairs and interests of the Dem-

ocratic Party of Maryland, Article 33, § 82, Maryland Code (1957). The office of the State Central Committee for Montgomery County is located at Rockville, Maryland. The local Committee is made up of eleven members elected quadrennially in the primary elections of the Democratic Party, the last of which occurred in May, 1962.

**7.** To which newspaper clippings were attached as exhibits.

tivities has been prohibited because a question would arise as to whether those participating in such activity were discharging their duties in an impartial and objective manner independent of partisanship. The Commission's present regulations conform with the election policy of the Hatch Act that employees in the executive branch should refrain from active participation in political activity involving national political parties. Therefore, your request for Amendment for Commission Rule and for Declaratory Order Granting Exemption Thereunder is denied.

"It is felt that any fundamental change in longstanding policy adhering to statutory authority would more appropriately be considered by the legislature. On March 10, 1965 Senator Brewster of Maryland filed a bill (S. 1474) 'To create a bipartisan commission to study federal laws limiting political activity by officers and employees by the Government.' The Commission favors such legislation as the proper procedure if changes are desired in the prohibitions of the Hatch Act."

On April 13, 1965, plaintiffs filed with the Commission a petition for reconsideration, which was denied on April 26, 1965.

The complaint herein was filed on May 25, 1965.

## II

In United Public Workers, etc. v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), certain employees of the executive branch of the federal government and a union of such employees sought an injunction to prohibit the members of the Civil Service Commission from enforcing against such employees section 9(a) of the Hatch Act, and a declaratory judgment that that section is unconstitutional.[8] They did not allege that they had violated the Act or that they were then threatened with any

disciplinary action, only that they desired to engage in specified acts of political management and in political campaigns and were prevented from doing so by fear of dismissal from federal employment. The Court held that their suit did not present a justiciable case or controversy. 330 U.S. at 86–91, 67 S.Ct. 556. Another plaintiff, also an employee of the executive branch, alleged that he actually had committed specific violations of the Act and that the Commission had charged him with violations and had issued a proposed order for his removal subject to his right to reply to the charges and to present further evidence in refutation. The Court held that his suit did present a justiciable claim or controversy. 330 U.S. at 91–94, 67 S.Ct. 556.

With respect to the plaintiffs who did not allege that they had violated the Act or were then threatened with any disciplinary action, the Court said:

"For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field. These appellants seem clearly to seek advisory opinions upon broad claims of rights protected by the First, Fifth, Ninth and Tenth Amendments to the Constitution. As these appellants are classified employees, they have a right superior to the generality of citizens, compare Fairchild v. Hughes, 258 U.S. 126 [42 S.Ct. 274, 66 L.Ed. 499], but the facts of their personal interest in their civil rights, of the general threat of possible interference with those rights by the Civil Service Commission under its rules, if specified things are done by appellants, does not make a justiciable case or controversy. Appellants want to engage in 'political management and political campaigns,' to persuade others to follow appellants' views by discussion, speeches, arti-

---

8. See note 1, above. Neither section 16 of the Act nor any regulation or order

adopted pursuant to section 16 was involved in the case.

cles and other acts reasonably designed to secure the selection of appellants' political choices. Such generality of objection is really an attack on the political expediency of the Hatch Act, not the presentation of legal issues. It is beyond the competence of courts to render such a decision. State of Texas v. Interstate Commerce Commission, 258 U.S. 158, 162 [42 S.Ct. 261, 66 L.Ed. 531].

"The power of courts, and ultimately of this Court to pass upon the constitutionality of acts of Congress arises only when the interest of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough. We can only speculate as to the kinds of political activity the appellants desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication. It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other.

" * * * No threat of interference by the Commission with rights of these appellants appears beyond that implied by the existence of the law and the regulations. * * * 330 U.S. at 89–91; 67 S.Ct. at 564–565.

That statement was made despite the fact that one of those plaintiffs alleged that he had obtained a watcher's certificate, but on the day before the election had telephoned a regional office

of the Commission and had been advised by a person who gave his name as Harold Dunlap that if he used the certificate, the Commission would see that he was dismissed from his job for violation of the Hatch Act; and therefore that he did not use the certificate. Fn. 18, pp. 87–88, 67 S.Ct. 563. The decision with respect to that employee has been criticized by Professor Davis in his Administrative Law Treatise, vol. 3, pp. 160–161. Professor Moore believes "that had the eleven employees alleged that they proposed to take some *specific* action that the Commission had ruled would violate the terms of the Act, a justiciable controversy would have been presented." 6 Moore's Federal Practice, ¶ 57.12 (2d ed.), p. 3071. He suggests that where "the employees and the Commission take contrary views as to a specific course of conduct, a justiciable controversy is presented. Unless the courts reach this conclusion, an employee will be forced to act at his peril, and the Declaratory Judgment Act would be valueless in this type of situation."

Plaintiffs argue that the decision in United Public Workers is no longer the law, citing Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952), and Connecticut Mut. Life Insurance Co. v. Moore, 333 U.S. 541, 68 S.Ct. 682, 92 L.Ed. 863 (1948). However, United Public Workers was not referred to in the majority opinion in either Adler or Moore, and it has been cited with apparent approval since those cases. International Longshoremen's Union v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954); Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).[9]

■ In a number of cases cited by plaintiffs, where an administrative regulation subjected the party attacking it

**9.** See also Public Affairs Press v. Rickover, 369 U.S. 111, 116, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) (Douglas, J., concurring); United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961); N.A.A.C.P. v. Button, 371 U.S. 415, 464, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (Harlan, J., dissenting); Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954); In re Citroen, 2 Cir., 267 F.2d 915 (1959); Lion Manufacturing Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833, 839 (1964); Lynch v. Torquato, 3 Cir., 343 F.2d 370, 373 (1965).

to immediate criminal penalties or to civil fines, the Supreme Court has found a case or controversy ripe for review.[10] In other cases the statute itself has provided for review.[11] Section 16 of the Hatch Act, with which we are dealing here, does not provide for judicial review of any action taken by the Commission thereunder;[12] and the review provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1009, are not generally applicable to the administration of the Federal Civil Service. 5 U.S.C.A. § 1004. Cappolino v. Kelly, 236 F.Supp. 955, aff'd per curiam, 2 Cir., 339 F.2d 1023 (1965); Hofflund v. Seaton, 105 U.S. App.D.C. 171, 265 F.2d 363, cert. den., 361 U.S. 837, 80 S.Ct. 55, 4 L.Ed.2d 77 (1959).[13] Hearing examiners have a special status under that Act, 5 U.S.C.A.

§§ 1004 and 1010, see McEachern v. United States, 4 Cir., 321 F.2d 31 (1963); the Supreme Court therefore was not required to discuss standing in Ramspeck v. Trial Examiner's Conference, 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872 (1953).[14]

■ The Court concludes that *United Public Workers* is still the law and must be followed by lower federal courts, so far as its holding goes. But its holding should not be extended to prevent employees from challenging in the courts a regulation of the Commission if the regulation contains and presently imposes on them an arbitrary or capricious discrimination, not justified by the purposes of the Act, which have been held to be constitutional.[15] The Hatch Act grants the Commission wide discretion in

10. American Trucking Ass'n v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); American Tel. & Tel. Co. v. United States, 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 (1936); Pacific States Box and Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935).

11. E. g., United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956).

12. Section 12 of the Act, enacted at the same time, does provide for judicial review of action taken under section 12.

13. Civil Service Regulations provide administrative remedies, which require the employee to run serious risks and are not as satisfactory a remedy as this suit would be. 5 C.F.R. 733.601–608; 733.-701–710. Review may be had in an action under 28 U.S.C.A. §§ 1346(a), 1361 and 1391(e). See Brown v. Macy, E. D.La., 222 F.Supp. 639 (1963), aff'd 5 Cir., 340 F.2d 115 (1965).

14. At the trial level in Ramspeck, Judge Laws had said:
In United Public Workers v. Mitchell, supra, the action which plaintiffs sought to prevent defendants from taking was conditioned upon plaintiffs' first taking an action which they had not taken at the time suit was brought. As indicated above, the action complained of in the case at bar is not contingent on future events, but is an accomplished fact. Where regulations have been adopted and are about to be put into effect, one whose rights may

be adversely affected may proceed to protect himself before suffering actual damage. The court is of opinion that a present justiciable controversy exists in favor of plaintiffs." 104 F.Supp. 734, at 739.
This point was not discussed by the Court of Appeals or the Supreme Court.

15. In United Public Workers v. Mitchell, supra, the Supreme Court held, inter alia: that Congress has the power to regulate, within reasonable limits, the political conduct of federal employees, in order to promote efficiency and integrity in the public service, 330 U.S. 96–103, 67 S.Ct. 556, that the fundamental human rights guaranteed by the First, Fifth, Ninth and Tenth Amendments are not absolutes; and the Court must balance the extent of the guarantee of freedom against a congressional enactment to protect a democratic society against the supposed evil of political partisanship by employees of the Government, pp. 95–96, 67 S.Ct. 556, that the Hatch Act permits full participation by federal employees in political decisions at the ballot box and forbids only the partisan activity deemed offensive to efficiency, and does not restrict public and private expressions on public affairs, personalities and matters of public interest, not an objective of party action, so long as the Government employee does not direct his activities toward party success, pp. 99–100, 67 S.Ct. 556, that the determination of the extent to which political activities of Government employees shall be regulated lies primarily with Congress; and the courts will in-

carrying out those purposes. Nevertheless, a Court may enjoin arbitrary or capricious discriminations, at the suit of a group of employees, acting on their own behalf and on behalf of others similarly situated, or at the suit of a citizen or an organization of citizens, if the plaintiffs show that they are now subject to an arbitrary or capricious discrimination contained in a regulation of the Commission.[16] The Court must therefore consider whether such a discrimination has been shown by the plaintiffs herein.

### III

In *United Public Workers* the Court upheld the validity of the broad restrictions imposed by section 9 of the Hatch Act against an attack based on the First, Fifth, Ninth and Tenth Amendments. See note 15, above, for a summary of that part of the decision.

The regulation under attack in this case relaxes the broad restrictions embodied in section 9, but preserves the basic principles approved by the Supreme Court. The distinction between partisan and non-partisan local politics rests upon a rational basis in view of the nation's interest in preserving a non-partisan civil service and other considerations discussed by the Supreme Court in *United Public Workers*.[17] There are competing interests, represented by plaintiffs herein, which might justify application of the Hatch Act on terms of all or nothing; but the needs of communities heavily populated by government workers also must be considered. The balancing of all those interests has been committed by the Congress, under section 16 of the Hatch Act, to the Commission.[18] The latter's decision in favor of continued non-partisanship is not unreasonable, arbitrary or capricious.[19] As the Supreme Court said

terfere only when such regulation passes beyond the generally existing conception of governmental power, p. 102, 67 S.Ct. 556.

16. See Yick Wo v. Hopkins, 118 U.S. 356, 30 L.Ed. 220 (1885), and cases cited in note 19, below.

17. Plaintiffs' reliance on section 18, 5 U.S.C.A. § 118n, see note 1, above, is misplaced. That section is clearly limited to elections in which none of the candidates or issues are identified with national or state political parties; it does not deal with the kind of elections in which plaintiffs are interested.

18. In *United Public Workers*, the Court said:
"  *  *  * Congress and the President are responsible for an efficient public service. If, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics as party officers or workers, we see no constitutional objection.
"Another Congress may determine that on the whole, limitations on active political management by federal personnel are unwise. The teaching of experience has evidently led Congress to enact the Hatch Act provisions. To declare that the present supposed evils of political activity are beyond the power of Congress to redress would leave the nation impotent to deal with what many

sincere men believe is a material threat to the democratic system. Congress is not politically naive or regardless of public welfare or that of the employees. It leaves untouched full participation by employees in political decisions at the ballot box and forbids only the partisan activity of federal personnel deemed offensive to efficiency. With that limitation only, employees may make their contributions to public affairs or protect their own interests, as before the passage of the act." 330 U.S. at p. 99, 67 S.Ct. at p. 569.

19. See by way of analogy: Williamson v. Lee Optical Co., 348 U.S. 483, 488–489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Detroit Bank v. United States, 317 U.S. 329, 337–338, 63 S.Ct. 297, 87 L.Ed. 304 (1943); Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 401, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441 (1939); Steward Machine Co. v. Davis, 301 U.S. 548, 584–585, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). The regulation does not violate the principle that even though "the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 478, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

in Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 97, 81 S.Ct. 1357, 1411, 6 L.Ed. 2d 625 (1961):

"\* \* \* Especially where Congress, in seeking to reconcile competing and urgently demanding values within our social institutions, legislates not to prohibit individuals from organizing for the effectuation of ends found to be menacing to the very existence of those institutions, but only to prescribe the conditions under which such organization is permitted, the legislative determination must be respected. United Public Workers of America (C. I. O.) v. Mitchell, 330 U.S. 75 [67 S.Ct. 556, 91 L.Ed. 754]."

There is no merit in plaintiffs' contention that the "restrictions interfere unduly with existing political institutions which only the states or their citizens have the power to modify under the Ninth and Tenth Amendments." The regulation does not prevent a local group such as the "Non-Partisans for a Better Montgomery County" from participating in elections as a political party.[20]

Plaintiffs' argument that the regulation in question authorizes the kind of "interference" with elections prohibited by section 9 of the Hatch Act is also without merit. The relevant language in section 9 is: "It shall be unlawful for any person employed in the executive branch of the Federal Government, or any agency or department thereof, to use his official authority or influence for the purpose of interfering with an election or affecting the result thereof." No such interference is authorized by the regulation.

Plaintiffs allege that the "Non-Partisans for a Better Montgomery County" will enter the field in Montgomery County this year as a "new political party" and nominate candidates pursuant to Article 33, section 67, of the Maryland Code, 1957 ed., 1965 Cum.Supp. See also section 94. It has not yet done so, and this Court cannot tell at this time whether a group of candidates who may consider or call themselves non-partisans will in fact run as "Independents" or as members of a "political party" within the meaning of the Hatch Act or the applicable Maryland statutes or both. See Article 33, sections 67 and 94(e) and (g) of the Maryland Code.

Plaintiffs assume and argue that under 5 C.F.R. 733.301 a government employee registered in the Democratic Party could not publicly express his disapproval of a candidate of the Republican Party or a candidate of the proposed "Non-Partisan" party, whereas a supporter of a "Non-Partisan" party candidate could publicly express his criticism of the Democratic or Republican candidates. This argument is not supported by either the language or the purpose of the regulation in question. The regulation does not prohibit an employee registered as a Democrat or a Republican from expressing publicly his opinions with respect to local candidates, whether they run as Democrats, as Republicans, as candidates for some other party, whatever the name, or as Independents, so long as the employee does not "become involved in political management in connection with the campaign of a party candidate for office."[21] The regulation also prohibits him from engaging in "non-local partisan political activities."[22] Both prohibitions are appropriate to carry out the purpose of the Hatch Act, approved in United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556 (1947).

20. If, however, that group of any other local political organization does qualify as a political party within the meaning of the Hatch Act, the Commission would no doubt take appropriate action against any federal employees who violate the statute or the applicable regulation.

21. See 733.301(a) (2). See also Political Activity and Political Assessments, U. S. Civil Service Commission Form 1236, January 1944, p. 12, and Political Activities of Federal Officers and Employees. U. S. Civil Service Commission Pamphlet No. 20, March 1964, pp. 12–13.

22. See 733.301(a) (1).

A government employee may run as an independent candidate and may take part in the campaign of an independent candidate. But nothing in Regulation 733.-301 or in the interpretation thereof by the Commission permits an employee to run as the candidate of any political party, whether it be called Democratic, Republican, Socialist or "Non-Partisan", or to participate in the campaign of a "Non-Partisan" candidate if that candidate is in fact running as a member of a "political party".

The Court must assume that the Commission, in any case brought to its attention, will consider all questions of fact and law, and will decide fairly whether the employees have violated the Hatch Act and the regulations adopted pursuant thereto.

If, as the situation develops, the Commission issues instructions or makes rulings which contain arbitrary or capricious discriminations against any of the plaintiffs herein, or others similarly situated, they may then have a basis for seeking injunctive or other judicial relief which they do not now have under the allegations of their present complaint.

### IV

■ (a) Other contentions of plaintiffs may be disposed of briefly. The Court has read and considered the legislative history cited by plaintiffs and concludes that it does not support plaintiffs' argument that section 16 was intended to permit employees in the Maryland and Virginia counties adjacent to the District of Columbia to participate in the campaigns of the Democratic and Republican candidates, or the candidates of any other political party, in their respective counties.

(b) Plaintiffs argue that even if the Commission has the power to impose the restrictions in question, it failed to make the factual determination required by

section 16 as a prerequisite thereto. For the requirements of section 16, see note 1, above. Plaintiffs' argument ignores the facts shown by the record. The Commission granted the exemption on the recommendation of its General Counsel contained in an elaborate memorandum which reviewed the request of Salerno, et al., the relevant facts and circumstances, and the applicable Maryland law, including the provisions dealing with the candidacy of independent voters. The General Counsel's memorandum ended as follows:

*"RECOMMENDATION*

"Inasmuch as Federal employees residing in Montgomery County, Maryland, are permitted by State law to enter the general election for county-wide offices, and inasmuch as it would appear to be in the domestic interest of Federal employees residing in Montgomery County to have a more active voice in local governmental affairs, it is recommended that the privileges of Section 16 of the Hatch Act to be extended to Federal employees residing in Montgomery County, Maryland, subject to the restrictions stated in the Commission's regulations.

"It appears that no further investigation or public hearing need be held since the record before the Commission satisfactorily supports the application of Mr. James Salerno, and the members of his group (and which carries the endorsement of the Montgomery County Civic Federation) for an extension of Section 16 privileges to Federal employees residing in Montgomery County, Maryland."

The recommendation was approved by the signature of each of the Commissioners; that approval constituted the finding of fact required by section 16. The amendment to the Regulation was duly promulgated. See note 5, above.[23]

---

23. Plaintiffs abandoned the first prayer of their complaint, which sought a declaratory judgment that the Commission, in denying plaintiffs the hearing requested in their petition of March 2, 1965, acted arbitrarily and abused their discretion in violation of sections 4(d) and 5(d) of the Administrative Procedure Act of 1946.

## Conclusion

Defendants' motion for summary judgment dismissing the complaint must be granted, without prejudice, as indicated at the end of section III of this opinion. Counsel will prepare an appropriate judgment order.