## STATE OF TEXAS v. INTERSTATE COMMERCE COMMISSION AND RAILROAD LABOR BOARD.

### IN EQUITY.

No. 24, Original.   Argued on motions to dismiss December 7, 8, 1921.— Decided March 6, 1922.

1. Regarded as corporate entities created for governmental purposes, the Interstate Commerce Commission and the Railroad Labor Board are not citizens of any State.   P. 160.
2. Abstract questions of the power of Congress to enact specified legislation do not present a case or controversy within the judicial power as defined by the Constitution.   P. 162.
3. A suit by a State against the Railroad Labor Board and the Interstate Commerce Commission, seeking to annul action taken by them under the Transportation Act of 1920, as an unconstitutional invasion of the rights of the State, injurious to her citizens, *held* not to be entertained by this court in the exercise of its original jurisdiction where the decisions and orders complained of had been put in execution and their annulment would directly and unavoidably affect resulting interests of carriers and carrier employees who were not parties or represented in the litigation.   P. 163.
4. That the citizenship of such necessary parties prevents their being joined will not justify proceeding in their absence.   P. 163.
5. A suit by a State to set aside orders of the Interstate Commerce Commission must be brought in the District Court and the United States must be made a defendant.   P. 164.   *North Dakota* v. *Chicago & Northwestern Ry. Co.*, 257 U. S. 485.

Bill dismissed.

On motions to dismiss an original bill in this court, brought by the State of Texas against the Interstate Commerce Commission and the Railroad Labor Board, and seeking to have declared unconstitutional certain portions of the Transportation Act of 1920, to annul all action taken thereunder by either defendant in respect of railroad carriers in Texas, and to restrain the defendants from taking any further action thereunder in respect of those carriers.

*Mr. Tom L. Beauchamp,* with whom *Mr. C. M. Cureton,* Attorney General of the State of Texas, *Mr. W. A. Keeling, Mr. Walace Hawkins* and *Mr. John E. Benton* were on the brief, for complainant.

*Mr. Solicitor General Beck,* with whom *Mr. Robert P. Reeder* was on the brief, for the Railroad Labor Board.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Alfred P. Thom,* for the Association of Railway Executives, as *amicus curiae,* by special leave of court.

*Mr. N. A. Stedman, Mr. E. B. Perkins* and *Mr. Daniel Upthegrove,* by leave of court, filed a brief on behalf of the St. Louis Southwestern Railway Company, as *amici curiae.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a bill in equity brought in this court by the State of Texas against the Interstate Commerce Commission and the Railroad Labor Board. The relief sought is, first, a declaration that the main provisions [1] of Titles III and IV of the Transportation Act of 1920, c. 91, 41 Stat. 456, 469, 474, are unconstitutional and void,

---

[1] Particularly §§ 300–316, subdivisions 18–22 of § 402, §§ 407 and 416, subdivison 1 of § 418, and §§ 422 and 439.

secondly, an annulment of all action heretofore taken thereunder, by either defendant, in respect of railroad carriers in Texas, and, thirdly, an injunction restraining the defendants from taking any further action thereunder in respect of those carriers. The right of the State to bring the suit, our power to entertain it and the merits of the case made by the bill are all challenged by motions to dismiss.

In the bill and supporting brief the defendants are spoken of as citizens of States other than Texas and this is treated as bringing the suit within our original jurisdiction. But both defendants are sued as corporate entities created by the United States for governmental purposes; and, if that be their status,[2] they are not citizens of any State,[3] but have the same relation to one State as to another. So, to entertain the suit we should have to find some ground of jurisdiction other than the one suggested. But we need not stop to consider the possible grounds whereon a State may invoke our original jurisdiction, because an examination of the bill discloses insuperable obstacles to our entertaining it on any ground.

The provisions of Titles III and IV which are drawn in question are all in terms confined to matters pertaining to railroad carriers engaged in interstate or foreign commerce, and evidently were enacted in what Congress regarded as an exercise of its power to regulate such commerce.

Those relating to the Railroad Labor Board—they are in Title III—may be summarized as clothing the Board with authority to entertain and decide disputes between carriers and their employees in respect of wages, grievances, rules or working conditions; as directing that all parties to such a dispute be accorded a hearing either in

[2] See *Texas & Pacific Ry. Co.* v. *Interstate Commerce Commission*, 162 U. S. 197, 203–204.

[3] *Bankers Trust Co.* v. *Texas & Pacific Ry. Co.*, 241 U. S. 295, 309.

person or by counsel, and as requiring that the decisions be entered in an appropriate record and that they and all violations of them be given such publicity as the Board may indicate.

The provisions relating to the Interstate Commerce Commission—these are in Title IV—may be summarized as investing the Commission with a substantial measure of control or supervision over interstate rates and fares; over the removal of any undue or unreasonable advantage, preference or prejudice, as between persons or localities in intrastate commerce on the one hand and in interstate commerce on the other, arising from intrastate rates and fares; over the removal of any undue, unreasonable or unjust discrimination against interstate commerce caused by intrastate rates and fares; over the division of the carriers of the country into territorial groups for valuation and rate making purposes; over what shall be regarded as a fair return on the aggregate value of the property of the carriers in each group; over the maintenance and use of certain reserve and contingent funds to be set apart from any revenues in excess of such fair return; over the construction and acquisition of new lines and the extension and abandonment of old ones; over the pooling of traffic or earnings; over the consolidation of carriers; over the issue of stocks, bonds and other securities by carriers, and over making the same person a director or officer of more than one carrier. These provisions contemplate and require in respect of most of the matters recited that the State wherein the carrier's line lies shall be notified and accorded a hearing before a finding or order is made by the Commission.

Other statutes prescribe that orders of the Commission, other than for the payment of money as reparation, may be enforced in the district courts at the suit of the United States, or may be annulled, set aside or suspended in the district courts at the suit of any aggrieved party

in interest, but that all suits of the latter class shall be brought against the United States as the principal defendant.

The bill is of unusual length, sixty-five printed pages. Much of it is devoted to the presentation of an abstract question of legislative power—whether the matters dealt with in several of the provisions of Titles III and IV fall within the field wherein Congress may speak with constitutional authority, or within the field reserved to the several States. The claim of the State, elaborately set forth, is that they fall within the latter field, and therefore that the congressional enactment is void. Obviously, this part of the bill does not present a case or controversy within the range of the judicial power as defined by the Constitution. It is only where rights, in themselves appropriate subjects of judicial cognizance, are being, or about to be, affected prejudicially by the application or enforcement of a statute that its validity may be called in question by a suitor and determined by an exertion of the judicial power. *Georgia* v. *Stanton,* 6 Wall. 50, 73, *et seq.; Muskrat* v. *United States,* 219 U. S. 346, 361; *Stearns* v. *Wood,* 236 U. S. 75, 78.

The portion of the bill particularly directed against the action of the Railroad Labor Board alleges, in effect, that the Board, proceeding under Title III, has heard and decided divers disputes over working conditions and wages between carriers in Texas and their employees; that conformably to these decisions the working conditions have been changed and the wages of the employees materially raised; and that as a result the operating expense of the carriers has been greatly increased, necessity for a larger operating income has arisen, rates and fares have been raised accordingly, and producers, shippers and consumers have been and are being injuriously affected.

Even if these allegations, in connection with other parts of the bill, could be regarded as presenting a concrete

controversy turning on the validity of Title III, this would not enable us to entertain the suit. The bill makes it plain that the carriers and employees have put the Board's decisions into effect and have adjusted their relations on that basis. There are none to whom the controversy would be of such immediate concern as to them; and, should it be resolved against the validity of Title III and the Board's action annulled, their interests would be directly and unavoidably affected. They are not parties to the bill; nor do any of those who are parties represent them. The Board does not claim to do so; and the attitude of the State is antagonistic to them. To take up and solve the controversy without their presence and without their being represented would be quite inadmissible, considering the exceptional nature of our original jurisdiction. *California* v. *Southern Pacific Co.,* 157 U. S. 229, 257; *Minnesota* v. *Northern Securities Co.,* 184 U. S. 199, 245. If their citizenship be such that they cannot be brought into the suit consistently with the limitations on our original jurisdiction, this does not justify us in proceeding in their absence. The cases just cited leave no doubt on this point.

The portion of the bill particularly directed against the action of the Interstate Commerce Commission charges, in substance, that the Commission, proceeding under Title IV, has placed the carriers of Texas in a territorial rate group with carriers of other States where railroad construction and operation are attended with greater cost, has approved a general increase in the interstate rates and fares of carriers in that group, has directed a corresponding increase in the intrastate rates and fares of carriers in Texas, has authorized the abandonment by certain carriers of their lines within the State, and has exercised a supervision over the issue of stocks, bonds and other securities by carriers chartered by the State;— all of which orders, it is alleged, impinge on the powers

reserved to the State and subject its citizens to unnecessary expense and great inconvenience.

If the State have a right to sue to annul these orders, a familiar rule requires that it shall proceed with due regard for the rights of the carriers who have put the orders into effect and are conforming to them. On the question whether the orders are invalid and should be annulled, or are valid and should be upheld, the carriers are entitled to be heard. Their interests are directly involved and will be necessarily affected by the outcome. They are not parties to the bill, and as to all but one the bill makes it clear that their citizenship is an obstacle to making them such. This, without more, would preclude us from awarding any relief on this portion of the bill. *California* v. *Southern Pacific Co., supra; Minnesota* v. *Northern Securities Co., supra.* Besides, there are statutory provisions, before noticed, which direct that all suits to set aside, annul or suspend orders of the Commission be brought in the District Courts and the United States made a defendant. Jud. Code, §§ 207, 208, 211; Act of October 22, 1913, c. 32, 38 Stat. 219–220. These provisions were recently considered by us in a related case and it was there held that the public policy which they reflect requires that a State aggrieved by such an order be remitted to the remedy which they afford—a suit in the District Court in which the United States is made a party. *North Dakota* v. *Chicago & Northwestern Ry. Co.,* 257 U. S. 485.

Some emphasis is laid on two statements in the bill— one that the State owns an intrastate railroad 33.55 miles in length and operates the same as a common carrier, and the other that it is a shipper of freight and user of passenger transportation over other lines in both interstate and intrastate commerce. Apparently the only purpose of these statements is to show that the State has such an interest as entitles it to call in question the orders of the Commission dealing with rates and fares. At all events,

the bill does not connect them with any of the other questions sought to be presented or predicate any other claim to relief on them. They therefore are covered by the ruling that suits to set aside, annul or suspend the Commission's orders should be brought in the District Courts where all proper parties, including the United States, may be made defendants and accorded an appropriate hearing.

What has been said suffices to show that we are not at liberty to entertain the bill in the exercise of our limited original jurisdiction.

In passing it should be observed that some of the provisions of the Transportation Act, assailed by the bill, have recently been upheld in other cases brought before us in regular course on appeal from decrees in the District Courts. *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co.,* 257 U. S. 563; *New York* v. *United States,* 257 U. S. 591.

*Bill dismissed.*