## ISNER v. INTERSTATE COMMERCE COMMISSION.

### No. 8823.

United States District Court
E. D. Michigan, S. D.
April 24, 1950.

362

George Pratt (of Pratt & Graham), Detroit, Mich., for plaintiff.

Edward T. Kane, U. S. Atty., Detroit, Mich., Roger P. O'Connor, Asst. U. S. Atty., Detroit, Mich., Daniel W. Knowlton, Chief Counsel, I., C. C., Washington, D. C., Samuel R. Howell, Attorney, I. C. C., Washington, D. C., for defendant.

KOSCINSKI, District Judge.

Plaintiff filed complaint for declaratory judgment and preliminary and permanent injunction to restrain the defendant Interstate Commerce. Commission, its agents, servants, employees, and attorneys, and all persons in active concert or participation with them from acts of interference with plaintiff's business of leasing and servicing motor vehicles in the City of Detroit, Michigan, under a lease dated August 22, 1949, without first giving plaintiff notice of investigation and hearing, making findings and issuing an order as required under the Interstate. Commerce Act, Part II, relating to motor carriers, 49 U.S.C.A. § 304(c).

The complaint sets forth alleged threats of prosecution made to plaintiff and plaintiff's lessee by defendant's employees, which resulted in the cancellation of plaintiff les-

sor's lease by him under duress, and a direct statement made to the Michigan Public Service Commission by Henry Reimers, District Supervisor of the Motor Carriers Division of the Commission, whose office is in the Federal Building at Detroit, Michigan, to the effect that plaintiff's operations had been found to be those of a contract carrier of property in interstate commerce by motor vehicle for compensation, requiring certificate of public convenience and necessity or a permit from the Interstate Commerce Commission; that this statement to the Michigan Public Service Commission resulted in the cancellation of plaintiff's Michigan permit which is necessary under Michigan law for the use of that State's highways in interstate operations, when in fact no finding of unlawful operation, nor any finding whatsoever had been made by the Interstate Commerce Commission concerning plaintiff, no order issued, nor hearing held; that Reimers' statement was made with intent and knowledge that the Michigan Commission would so act to cancel plaintiff's Michigan permit, with resultant irreparable damage to plaintiff; that such actions are entirely outside the scope of the authority of the Commission and of its agents. The preliminary injunction is sought by plaintiff to restrain defendant pending compliance with the statute. Service of Summons and Complaint was made on the United States District Attorney at Detroit, Michigan, and copies forwarded by registered mail to the Attorney General of the United States and to the Chairman of the Interstate Commerce Commission at Washington, D. C., pursuant to Federal Civil Procedure Rule 4(d) (5), 28 U.S.C.A.

Defendant moved to dismiss on the following grounds: (1) That the venue is improperly laid; (2) That this court lacks jurisdiction of the cause; (3) That complaint fails to state a cause of action; (4) That plaintiff has not exhausted his administrative remedy; (5) That plaintiff seeks hereby to evade prosecution; (6) That pendency of another suit in this court to which both parties here inter alia, are party, and involving some of the same issues, bars this action for declaratory judgment.

Hearing on plaintiff's motion for preliminary injunction, and defendant's motion to dismiss was joined. Plaintiff testified in support of the allegations made in the complaint, while Mr. Reimers testified on behalf of the defendant. Upon plaintiff's application for preliminary injunction, the court makes the following Finding of Facts:

1. Plaintiff is the owner of two motor trucks which under date of May 2, 1949, he leased to the Valentine & Company, Inc., for the transportation of its product between South Kearny, New Jersey, and Detroit, Michigan. The Commission's District Supervisor at Detroit, Henry Reimers, investigated the mode and conditions of the trucking operations under that lease and made representations to plaintiff of the unlawfulness of such operations under the law. Through his counsel plaintiff conceded the unlawfulness of the operation under the lease, and, in agreement with the lessee, such lease was cancelled and a new lease entered into between the same parties under date of August 22, 1949. Under the latter lease plaintiff leased to the Valentine & Company, Inc., two motor trucks for one year, for the transportation of Valentine & Company's own goods and merchandise to and between its plants and warehouses, wherever situated, for a rental of $1500.00 per month, and pursuant to the direction and under the exclusive control and supervision of the lessee. The lease further specified among other things, that the lessee shall pay for all gasoline, oil and garage expense; that the drivers of the trucks shall be in the employ of the lessee who shall pay their salaries and have sole right to hire and discharge them. It was also one of the conditions of the lease that the trucks should bear the name of Valentine & Company, Inc., Division of the Valspar Corporation, and an appropriate sign thereon to indicate the fact that the truck is leased from the lessor who is plaintiff herein.

2. Trucking operations were resumed under provisions of the new lease. The

Commission's District Supervisor at Detroit in routine discharge of his duties again investigated such trucking operations and reported the result of his investigations to his superior, the District Director of the Motor Carrier Division of the Interstate Commerce Commission at Chicago, Illinois. Plaintiff's business records and books, reflecting the trucking operations under the new lease, were checked by Reimers, the Commission's District Supervisor at Detroit, with the result that Reimers warned Isner orally either to discontinue operations as a contract carrier or obtain a permit from the Commission as a contract carrier, otherwise face possible criminal prosecution, since the trucking operations did not follow the terms and conditions of the lease and were not, therefore, exempt from the statutory regulations under Part II of the Interstate Commerce Act, prohibiting, under Sec. 322(a, c), among other things, the use of a false lease to obtain transportation of property for less than the applicable rate or charge, and providing penalties for those who shall knowingly and wilfully by any such means or otherwise fraudulently seek to evade or defeat any regulation provided for motor carriers. It is plaintiff's contention that he is not a motor carrier at all but that he is only a lessor of trucks and not subject to the Commission's supervision and regulations.

3. The permit issued by the Michigan Public Service Commission to Isner on May 20, 1949, was not renewed for the year 1950 on the basis of information given to that body by Reimers. It contains a statement that the applicant, David Isner, is a contract carrier within the terms in subdivision (i) of Section 1 of Act No. 254, of the Public Act of 1933, as amended, defining such contract carriers, and that it was issued as an original contract carrier's permit authorizing the transportation of property for Valentine & Company, Inc., between Detroit and the Michigan-Ohio stateline, interstate, providing, further that the vehicles operated under said permit shall be assigned to the shipper by the carrier for the shipper's exclusive use and control.

4. Plaintiff then filed a petition with the Commission praying that his status be determined as not a motor carrier subject to provisions of the law under Part II of the Interstate Commerce Act and therefore not required to obtain a permit from the Commission in accordance with the Commission's rules and regulations. Shortly thereafter plaintiff withdrew his petition from the Commission's consideration and filed this suit. Neither the Interstate Commerce Commission, nor any member thereof, nor any person empowered or authorized to do so, entered any order or made any final determination on behalf of the Commission with respect to the matters herein set forth.

On the basis of the above findings of facts the court makes the following Conclusions of Law:

1. Plaintiff invokes the general venue Statute 28 U.S.C.A. § 1391(c) as authority for venue of this suit. This section provides: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

In order to bring this suit here for venue purposes, plaintiff must establish (1) that the Interstate Commerce Commission is a corporation; (2) that it is the kind of corporation Congress intended to bring within this section; (3) that it is either incorporated or licensed to do business or is doing business in this judicial district.

2. In a relatively early case, Texas & Pacific R. Co. v. Interstate Commerce Commission, 1896, 162 U.S. 197, 16 S.Ct. 666, 669, 40 L.Ed. 940, the Supreme Court held the Interstate Commerce Commission to be a corporation, in the following language: "We think that the language of the statute, in creating the commission, and in providing that it shall be lawful for the commission to apply by petition to the circuit court sitting in equity, sufficiently implies the intention of congress to create a body corporate with legal capacity to be a party plaintiff or defendant in the federal courts."

3. And, again, in a later case, State of Texas v. Interstate Commerce Commission and Railroad Labor Board, 1922, 258 U.S. 158, 160, 42 S.Ct. 261, 262, 66 L.Ed. 531, the Supreme Court indicated its agreement with the earlier decision relating to the legal status of the Interstate Commerce Commission: "In the bill and supporting brief the defendants are spoken of as citizens of states other than Texas, and this is treated as bringing the suit within our original jurisdiction. But both defendants are sued as corporate entities created by the United States for governmental purposes; and, if that be their status, they are not citizens of any state, but have the same relation to one state as to another. So, to entertain the suit, we should have to find some ground of jurisdiction other than the one suggested."

■ 4. A "body corporate" is a term applied to corporations, public and private, and is a term particularly applied to a public corporation having powers and duties of government. Utah State Building Commission, for Use and Benefit of Mountain States Supply Co., v. Great American Indemnity Co., 105 Utah 11, 140 P.2d 763, 767. Since this court must follow decisions of the Supreme Court of the United States it must be held here that the Interstate Commerce Commission is a corporation. Obviously, however, it is neither incorporated nor licensed to do business in this judicial district, and it remains to determine whether it is "doing business" in this district so as to have its residence here for venue purposes.

■ 5. The answer must be in the negative. The Interstate Commerce Commission is an arm, agency, or instrumentality of the federal government created by Act of Congress in activities of supervision and regulation of transportation operations in interstate and foreign commerce. It was created under constitutional authority specifically delegating to the Federal government powers to carry out its responsibilities in the interest of the safety, health and well-being of all the people, and without gain or profit. In the performance of its duties under authority of Congress it engages in government functions. Its activities are not corporate, it is engaged in the performance of public duties. Though it be a body corporate, it cannot be subjected to suit, except as specifically provided for by an Act of Congress. Under the law, 28 U.S.C.A. § 2322, suits against the Interstate Commerce Commission must be brought against the United States. This is not a suit wherein individual members of the Commission are made parties defendant, but it is a suit against the Commission as a body corporate. The Commission is not "doing business" in this district, in the sense and meaning and application which Congress intended under the general venue provisions for corporations 28 U.S.C.A. § 1391(c).

6. The phrase "doing business" has been often defined by courts as applying to various conditions and circumstances under many federal and state laws, but it has been generally construed as relating to a commercial or industrial activity with the ultimate object of pecuniary gain or profit, 12 C.J.S., Business, page 765. Carrying out a governmental function such as has been intrusted to the Interstate Commerce Commission by Congress cannot be taken to mean the same thing as any such activity as contemplated under the "doing business" phrase in Sec. 1391(c).

■ 7. The residence and principal office of the Interstate Commerce Commission is in the District of Columbia. This suit is filed against "The Interstate Commerce Commission of the United States". The United States has not waived immunity from suit in this or any other district under the circumstances presented here, so as to be subjected to suit within the general venue statute as set forth in Sec. 1391(c). See 28 U.S.C.A. § 2322 providing that actions to enforce, suspend, enjoin, annul or set aside orders of the Interstate Commerce Commission shall be brought by or against the United States. Since there is an absence of any order by the Commission, it follows that the plaintiff does not bring himself under 28 U.S.C.A. § 2322. The United States did not waive its immunity to be sued in the circumstances presented

here, and, in any event, the venue is improper under the general venue statute.

8. Complaint in this case was filed under the declaratory judgment statute, 28 U.S.C.A. § 2201. There is nothing in this Act to indicate that the government has consented to be sued under circumstances appearing here. Yeskel v. United States., D.C., 31 F.Supp. 956; Love v. United States, 8 Cir., 108 F.2d 43; cf. Gibson v. United States, 6 Cir., 161 F.2d 973. Furthermore, there is no actual controversy between the plaintiff and the Interstate Commerce Commission. Plaintiff's procedural remedy is plainly set forth in Part II of the Interstate Commerce Act. He filed his petition before the Commission and then withdrew it before the Commission had an opportunity to conduct a hearing and enter an order. He takes the position now that he is not amenable to the Commission's regulation and orders because he is not a motor carrier. He demands, in effect, that this court substitute itself for the Interstate Commerce Commission to make an original determination as to plaintiff's status under the Interstate Commerce Act in the leasing or operation of motor trucks under the provisions of the Act. This court cannot usurp the duties, responsibilities and functions of the Commission. The plaintiff cannot take a position under the circumstances appearing here and by-pass the statutory requirements and then rely upon his refusal to follow the statutory procedure as creating the "actual controversy" contemplated in the Declaratory Judgment Act.

9. The filing of a suit by plaintiff, invoking the general equity powers of this court and alleging that the defendant Commission has acted beyond the scope of its powers and authority, does not have the effect of conferring jurisdiction on this court where, as here, the requisite conditions to sue the United States have not been met. This court is without jurisdiction to entertain this complaint until plaintiff has exhausted his administrative remedies. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638; Riss & Co., Inc., v. I. C. C. et al., D.C.Cir.,

179 F.2d 810: Akers Motor Lines, Inc. et al. v. Malone Freight Lines, Inc. (Interstate Commerce Commission, Intervenor), D.C., 88 F.Supp. 654.

10. Plaintiff having failed to exhaust his administrative remedy before the Commission, this court is not only without jurisdiction to entertain plaintiff's complaint, but should stay its hand in restraining the Commission from enforcing the Interstate Commerce Act, Part II, relating to motor carriers, until the Commission has formally acted in the matter by entering or issuing an order, which it has not done up to now.

11. Plaintiff contends that Congress has not by law regulated the leasing of motor vehicles in interstate commerce and that therefore the Commission is without jurisdiction over truck leasing operations in any respect. Inasmuch as Section 322 (a, c) provides for the imposition of penalties on those who under the guise of a false lease circumvent or attempt to circumvent the regulations imposed by law, it is the Commission's duty to investigate such matters and any possible violations of the Interstate Commerce laws and regulations made thereunder. Certainly this is within the scope of the Commission's powers and duties. While the lease in question here may be a lawful one, it is the practices and operations under the guise of the lease which may be unlawful and subject to sanctions imposed by law. Having failed to resort to his administrative remedy before filing his suit in this court, the complaint fails to state a cause of action.

12. As a result of its investigations conducted through the Commission's agents and employees, the Commission has filed suit in this court against the plaintiff herein, David Isner, and the lessee, Valentine & Company, Inc., seeking a permanent injunction against both defendants from engaging in the business of a contract carrier and transporting property in interstate commerce as a common carrier by motor vehicle unless a certificate of public convenience and necessity or permit be issued by the Interstate Commerce Commis-

sion authorizing such transportation and operations. This proceeding was brought under provisions of Part II of the Interstate Commerce Act, Sec. 322. Trial of that suit will dispose of the issues raised by plaintiff in this proceeding.

### Order

Plaintiff's application and motion for issuance of a temporary or preliminary injunction against the defendant is denied. Defendant's motion to dismiss plaintiff's complaint is granted.