W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

TEAMSTERS INDUSTRIAL AND ALLIED EMPLOYEES UNION LOCAL NO. 73, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.

Civ. A. No. C 65–777.

United States District Court
N. D. Ohio, E. D.

May 11, 1966.

Charles Donahue, Dept. of Labor, Washington, D. C., Jacob I. Karro, Dept. of Labor, A. A. Caghan, Regional Director, Cleveland, Ohio, John W. Douglas, Asst. Atty. Gen., Washington, D. C., Merle M. McCurdy, U. S. Dist. Atty., Robert Rotatori, Asst. U. S. Dist. Atty., Cleveland, Ohio, for plaintiff.

Moses Krislov, Cleveland, Ohio, Robert C. Knee, Dayton, Ohio, P. D. Maktos, Washington, D. C., for defendant.

## MEMORANDUM

GREEN, District Judge:

This action was brought by plaintiff, the Secretary of Labor, against the defendant union under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481 and 482. The subject matter of the suit is a general election of all elective officers of the defendant held on May 26 to 28, 1965, and the results thereof.

In Paragraph VIII of the complaint plaintiff alleges that the following violations of Title IV of the Act occurred during the said election which may have affected the outcome thereof:

A. Defendant refused to allow each candidate to have an observer at the polls and at the counting of the ballots, in violation of section 401(c) of the Act (29 U.S.C. 481(c)).

B. Defendant failed to provide adequate safeguards to insure a fair election, in violation of section 401(c) of the Act (29 U.S.C. 481(c)), in that:

i. The official tabulation of the election was inaccurate.

ii. The ballot box was not properly protected pending a final count of the ballots.

iii. Decisions on the voiding of ballots were not properly made.

iv. Election Committee functions and authority were curtailed and limited by defendant's incumbent president and legal counsel.

C. The candidate who received the most votes for the office of vice president, James McGarry, was not installed in nor permitted to hold that office, in violation of his right to hold office under section 401(e), (29 U.S.C. 481 (e)), and in violation of the right of each member in good standing to cast one vote under section 401(e).

D. Winning candidates Walter Bryant and Richard Cunningham were subjected by defendant to threats, misrepresentations and other pressures resulting in their resignations. Such pressures constitute the denial of the right to hold office, and to support candidates without being subject to penalty, discipline or improper interference or reprisal of any kind, in violation of section 401(e) (29 U.S.C. 481(e)). These pressures, by causing the resignations, also deprived members of their right to vote, in violation of section 401(e).

E. Defendant denied a member in good standing, Robert Kopec, the right to be a candidate, to nominate, and to vote, in violation of section 401(e) of the Act (29 U.S.C. 481(e)).

The relief sought, in its important essentials, is:

(a) An order directing the defendant to install Bryant, McGarry and Cunningham to their respective elective offices during the pendency of this action.

(b) An order declaring the election held by defendant on May 26–28, 1965 to be null and void, and directing the conduct of a new election under the supervision of the plaintiff; or in the alternative declaring the successful candidates for the offices of President, Vice President and Secretary-Treasurer, Walter Bryant, James McGarry and Richard Cunningham, to be the officers of the defendant. [Prayer (c) of the complaint]

Defendant has filed a five-part motion directed to the complaint. Four of the branches basically present motions to dismiss the complaint, or to strike parts thereof, while the fifth is a motion for more definite statement. The Court will consider the various branches of the motion in the order set forth by defendant.

### BRANCH 1

■ Under the first section of its motion defendant moves:

(1) (a) To dismiss the complaint on the ground that indispensable parties to this action were not joined as parties to this action, or

(b) in the alternative to dismiss the complaint with leave to plaintiff to amend, joining such indispensable parties pursuant to F.R.C.P. 12(b) (7).

Defendant contends that the present incumbent officers and executive board of the union claim a right to the offices they now hold, and as this action seeks a new election relative to the said offices they have such an interest in this suit as to make them indispensable parties thereto.

It is plaintiff's position that under the controlling legislation only the Secretary of Labor and the labor organization whose election is drawn into question are necessary or proper parties to a Title IV suit.

The statute authorizing the institution of an action such as this, 29 U.S.C. § 482(b), in pertinent part, provides:

The Secretary * * * shall within sixty days after the filing of such complaint, bring a civil action *against the labor organization as an entity* in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election * * * (Emphasis added).

In the legislative history of this section reference is made to suits against the labor organization itself, without any indication of Congressional intent that anyone other than the organization would be a necessary or proper party to such action. 1959 U.S.Code Cong. & Adm. News (86th Cong., 1st Sess.) pp. 2407, 2466, 2507.

■ It is this Court's opinion, from the face of the statute itself and the legislative history thereof, that 49 U.S.C. § 482(b) contemplates only an action against the labor organization as an entity.

Defendant contends, however, that:

In fact, if Congress intended to deny to incumbents the right to defend, an error of constitutional dimensions arises * * *.

Defendant argues that the incumbent officers must be given notice and an opportunity to be heard, and that if this is not done there will be a denial of due process as to such officers. As the issue is framed by defendant, it appears to be whether Congress had the power to declare that the only indispensable party defendant to a suit to set aside a union election is the union itself.

Briefs of counsel and independent research have disclosed no reported decisions squarely on point. Plaintiff has appended to his brief, however, an order entered in Wirtz v. Pacific Coast District, Marine Engineers' Beneficial Assoc., (D.C.N.D.Cal., Civil No. 42388, Nov. 9, 1964) wherein a motion to dismiss a Title IV suit on the ground of failure to join as indispensable parties the elected officers of the union was denied. Plaintiff has also appended an oral ruling entered on a motion by union officers to intervene as parties defendant in a Title IV suit, wherein the court made clear its views that the only proper

formal parties to such a proceeding were the Secretary of Labor and the union, Wirtz v. Local 191, Teamsters (D.C.Conn., Civil No. 9776, March 31, 1964).

The Supreme Court has stated that there is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not, Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 80, 41 S.Ct. 39, 65 L.Ed. 145 (1920), although the general criteria still remain those enunciated in Shields v. Barrow, 17 How. 130, 15 L.Ed. 158 (1854). However, in State of Texas v. Interstate Commerce Comm., 258 U.S. 158, 42 S.Ct. 261, 66 L.Ed. 531 (1922), the Supreme Court in considering the question of indispensability of parties defendant observed:

> They are not parties to the bill; nor do any of the those who are parties represent them. The Board does not claim to do so, and the attitude of the state is antagonistic to them.

A similar expression regarding the representation of the interests of an absent party, or lack of such representation, by those named as parties defendant is found in Nix v. Spector Freight System, Inc., 264 F.2d 875 (C.A. 3, 1959), relied upon by defendant in its argument on this issue.

It is this Court's opinion that this question of representation before the court, in its relationship to the general context of the nature of the action, is the key to the issue posed herein by defendant.

■ The general purpose of the L.M.R.D.A. was to provide guarantees of fair treatment to and equal rights for members of labor organizations at the hands of those with whom they deal, including the labor organization itself, 29 U.S.C. § 401. The legislative history of the Act makes it clear that the statutory scheme thereof was directed at actions of the labor organization as an entity, as distinguished from private wrongs of individual officers or agents thereof. 1959 U.S.Code Cong. & Adm.News (86th Cong.

1st Sess.), p. 2312 et seq. The remedies of the Act are directed at the labor organization itself to correct infringements by the organization of rights guaranteed to its members under the law.

Although under the Act a union is deemed a juridical person, in every day existence it lives only through the actions of those who control it. Nevertheless, when the leaders of a labor organization act, their actions in law become those of the union, even though such actions may bear heavily on the affairs of the individuals.

It is this consideration of the nature of the L.M.R.D.A. and the remedies thereunder which leads the Court to conclude that the incumbent union officers are not indispensable parties to this lawsuit. This action is a statutory proceeding, brought against a union for alleged illegal acts of the union in violation of Federal law guaranteeing to the rank and file of such a union fair treatment by the union itself. The ramifications of such a suit do extend to the claimed rights of others, but the Court does not believe that this requires the joinder of such persons as indispensable parties to a Title IV action.

■ It is this Court's conclusion that Congress was not constitutionally prohibited from enacting legislation which would permit the prosecution and defense of an action under Title IV of the Act in the form of a representative suit. The Secretary of Labor is before the court on behalf of the complaining union members. The labor organization is before the court defending against the charges of illegal action. So long as the incumbent union officers direct the union affairs, as they now do in this case, it appears plain that the union will speak for, and defend, the "rights" of such officers drawn into controversy as a consequence of the alleged illegal acts of the said union.

The recent Supreme Court ruling in International Union, UAW v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965), cited by defendant, involved the question of the right of parties

to intervene on review proceedings under the National Labor Relations Act. The decision therein is based upon practical considerations arising from the nature of the action involved, and there is no suggestion in the opinion that joinder of the parties permitted to intervene was constitutionally required.

Defendant also poses a hypothetical example to the Court of a situation wherein a labor organization might not defend the rights of an officer whose position would be affected by a Title IV proceeding. There is no evidence that such is the situation herein, nor even a suggestion that it may be so. The Court believes, however, that if the issue ever squarely arose the rights of such an individual would be safeguarded under provisions of the Federal Rules of Civil Procedure other than Rule 19, see Rules 21 and 24, F.R.Civ.P.

Branch 1 of defendant's motion will be denied.

### BRANCH 2

The second part of defendant's motion is:

2(a) To dismiss the Complaint on the ground that the Complaint fails to state a claim on which relief can be granted or

(b) In the alternative to require plaintiff to recast his Complaint or

(c) In the alternative to require plaintiff to elect upon which grounds he will rely, and to strike the alternative grounds from his Complaint.

In this section defendant contends that the plaintiff cannot properly file a complaint alleging that an invalid election was held and in the same complaint seek the installation in office of two persons who received the most votes for certain offices in the said election and were thereafter allegedly forced to resign. It is defendant's position that:

The function of the Secretary of Labor is to make findings—and in so doing under the Act he must act in a quasi-judicial manner. He cannot make inconsistent findings of fact or adopt conflicting positions in a single cause.

■■ The short answer to this argument is that while under the Act the Secretary of Labor must indeed perform a quasi-judicial fact finding function his determination is not conclusive. This being so, the Court finds no fault in a complaint which alleges, in essence, that an invalid election was held and should be set aside, but that if the election was in fact valid, then two winning candidates were improperly forced to resign from their elected offices and should be restored thereto.

Branch No. 2 of defendant's motion is denied.

### BRANCH 3

This portion of defendant's motion is directed to those aspects of the complaint which pertain to the resignations of Mr. Bryant and Mr. Cunningham from office. The motion is:

(3) (a) To dismiss the Complaint on the grounds that the Complaint fails to state a claim on which relief can be granted, or

(b) In the alternative to recast his Complaint stating separate causes of action, or

(c) in the alternative to strike from the complaint Paragraph VIII D thereof and prayer (a), and from prayer (c) the balance of the prayer following the words "or in the alternative" appearing on lines 1 and 2 of page 5 of the Complaint.

Under this branch of the motion defendant advances two basic arguments:

1) That Title IV of the L.M.R.D.A. does not provide any right to relief for improperly induced resignations of installed officers.

2) That under the Act the sole remedy provided to correct illegal acts affecting an election is to order a new election, and therefore plaintiff's prayer for an order directing the installation as officers of Bryant and Cunningham is beyond the jurisdiction of the Court.

As to the second contention above, plaintiff concedes that the only remedy

specified in the statute to correct an election tainted with illegality is the ordering of a new election. Plaintiff contends, however, that under the general equitable powers of the court other appropriate remedies may be fashioned, as the circumstances may require.

The Court does not consider it necessary to determine this question at the present time. The principal issue before the Court is whether there is a right to any relief available under the Act for improperly induced resignations of officers, that is to say, whether the complaint states a claim upon which relief can be granted insofar as it pertains to Mr. Walter Bryant and Mr. Richard Cunningham. What remedy should be fashioned if a cognizable claim is stated in the complaint, and plaintiff is able to substantiate the said claim when called upon to do so, is a question which need not be resolved at this threshold stage of the lawsuit.

It appears to the Court, and counsel herein have indicated, that the question of whether there is a right to relief under Title IV of the Act to remedy forced resignations of union officers is one of first impression.

 Under Title IV of the L.M.R. D.A. the courts are authorized to act with regard to a challenged labor organization election upon a finding that a violation of section 401, 29 U.S.C. § 481, may have affected the outcome of the election. In this Court's opinion, under the mandate of the statute, and in light of the legislative history which discloses that Title IV was enacted in order to secure election of officers free from illegal influences or restraints, a court may set aside a union election if illegal acts were committed at any time during the elective process which affected the outcome of the said election. This Court believes that within meaning and spirit of Title IV of the Act "the outcome of an election" contemplates that time when those persons who received a majority of the votes in the election actually assume the offices to which they were elected. The court does not believe that the phrase "the outcome of an election," as it is used in the Act, can properly be restricted to include only actions prior to, or as part of the mechanical process of declaring a candidate elected based on the counting of ballots, being the theory advanced by defendant.

 This Court is not holding that relief is available under Title IV of the Act to remedy any and all wrongfully induced resignations of officers. What this Court does hold is that if illegal acts are committed prior to the installation of elected officers which prevent the persons so elected from assuming the offices to which they are properly entitled, such acts do affect the outcome of an election and may be remedied under Title IV of the Act. The limitation of this ruling obviates the question posed by defendant regarding federal preemption of a state's rights to grant relief to an officer wrongfully deposed from union office. If the actions causing such loss of office occur other than as a part of the elective process the aggrieved party must still rely on such right to relief as is provided by law other than the L.M.R.D. A.

 The question thus remains whether the complaint states a claim upon which relief can be granted, under the rule of law adopted herein. In this regard, from the face of the complaint it cannot be clearly ascertained whether the alleged illegal acts took place before or after the installation of the affected officers. In the briefs of both parties, however, it is recognized that the alleged coercive acts took place during the period between the counting of the ballots and the installation of officers.

Because of the uncertainty as to the time of the alleged illegal acts inherent in the complaint itself, the Court could properly reserve ruling on this branch of defendant's motion until the time of trial, and then apply the rule adopted herein to the facts as proved by the evidence. However, as the parties are in apparent agreement as to when the acts occurred, and as the agreed facts would support a ruling that the complaint states a claim

upon which relief can be granted as to the alleged coerced resignations of Bryant and Cunningham, the Court will deny Branch 3 of defendant's motion, and direct plaintiff to amend the complaint herein to reflect plaintiff's claim that the alleged coercive acts took place prior to the installation of officers.

### BRANCH 4

Branch 4 of defendant's motion is:

To dismiss the complaint as it relates to Robert Kopec in that it fails to state a claim upon which relief can be granted.

The basis of this motion is stated by defendant to be that the allegations of the complaint "are incomplete and state no claim in that plaintiff fails to allege whether Kopec has exhausted his internal remedies."

In arguing the branch of the motion defendant attacks the complaint in two regards. Defendant argues that under the International Constitution there are separate procedures for pre- and post-election protests, and that the complaint fails to show compliance with either.

Defendant is correct that the "exhaustion of remedies" doctrine of section 402(a) creates a defense to an action brought thereunder. Wirtz v. Local Union No. 125, International Hod Carriers, 231 F.Supp. 590 (D.C.N.D.Ohio, 1964). The Court believes, however, that the complaint herein as it applies to Mr. Kopec is sufficient to withstand a motion based on that doctrine.

As to the question of the pre-election protest procedure, there appears to be some ambiguity in the International Constitution concerning the channels of appeal on such a protest. While the Court is of the belief that the complaint does allege compliance by Mr. Kopec with the literal terms of the most pertinent clause of the constitution in this regard, the Court does not consider it necessary to decide the point.

This is an action under Title IV of the Act, to set aside an election already held. The complaint alleges that after the election Mr. Kopec made a protest concerning the same, and further alleges specific violations of section 401 (e) of the Act, 29 U.S.C. § 481(e), a part of Title IV, with regard to the rights of Mr. Kopec.

The Supreme Court has stated that Title IV of the Act is the portion of the L.M.R.D.A. which controls challenges to union elections. Calhoun v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), and that,

> Section 402 of Title IV, as has been pointed out, sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. id. p. 140, 85 S.Ct. p. 296.

In light of this, the Court believes that the "exhaustion of remedies" doctrine which derives from section 402(a) (1) must be restricted to the exhaustion of post-election remedies. Accord, Wirtz v. Local 30, Operating Engineers, D.C., 242 F.Supp. 631.

The purpose of the inclusion of the "exhaustion of remedies" doctrine within the Act was stated to be to preserve a maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections. 1959 U.S.Code Cong. & Adm.News (86th Cong., 1st Sess.) p. 2337. This is an indication that the doctrine was keyed to, and the legislative intent directed at, post-election remedies.

The question thus becomes whether the complaint alleges post-election compliance by Mr. Kopec with section 402(a), 29 U. S.C. § 482(a). In this respect it is essential to remember that section 402(a) is framed in the alternative, and permits the filing of a complaint with the Secretary by a union member who,

> (1) * * * has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) * * * has invoked such available remedies without obtaining a final decision within three calendar months after their invocation.

In the complaint the following allegations are made concerning Mr. Kopec's post-election actions:

After the election, on or about May 30, 1965, the said member did make and enter a protest with the Secretary-Treasurer of the defendant, alleging violations of section 401 of the Act in the election. Having invoked the available remedies under the Bylaws of the defendant and the Constitution of the International without obtaining a final decision within three calendar months after their invocation after the election, said member did on September 15, 1965 file a complaint with the Secretary of Labor in accordance with section 402(a) of the Act (29 U.S.C. 482(a)), alleging violations of provisions of section 401 of the Act (29 U.S.C. 481) on the part of defendant in the conduct of the election.

Construed most strongly in plaintiff's favor the foregoing allegations may be interpreted as showing a right in Mr. Kopec to proceed to file a complaint with the plaintiff under 29 U.S.C. § 482(a)(2).

 In his brief plaintiff states that perhaps defendant would better understand the foregoing allegations if a sentence were included stating that "Mr. Kopec never received a reply to his May 30, 1965 protest." Not only would defendant better understand the complaint if such were included, but its presence would not require the Court to rely on a general allegation, conclusory in nature, to find in the complaint an allegation of compliance with the statutory mandate and would put in the complaint an allegation of fact to which full and proper response could be made.

Consequently, while the Court holds the complaint to be legally sufficient to withstand this motion, although barely so, the Court will require plaintiff to amend the allegations relating to Mr.

Kopec in the manner which has been suggested by plaintiff. As with the required amendment under Branch 3 of this motion, this is not to correct any legal deficiency presently existing in the complaint, but rather to make the pleading more reflective of plaintiff's actual contentions and to permit a clearer defining of the issues between the parties on the basic pleadings.

### BRANCH 5

The final branch of defendant's motion is:

To require the plaintiff to make a more definite statement regarding the allegations as set out in the Complaint in paragraphs VIII, B, i, ii, iii, iv on pages 3 and 4 thereof.

The specific allegations of the complaint to which this motion is directed were previously set forth herein, and will not be restated at this time.

In opposing this branch of defendant's motion plaintiff cites Rule 8 of the Federal Rules of Civil Procedure relating to the requirements of a proper complaint, and many case authorities holding that a motion for more definite statement cannot properly be used as a substitute for the discovery procedures of the Federal Rules.

 While this Court recognizes that plaintiff is correct as to the controlling law, as a practical matter defendant is entitled to the information sought under this motion, although it should be obtained by way of discovery. However, as plaintiff must file an amended complaint to conform with this Court's rulings on other branches of this motion, the Court sees no harm in requiring plaintiff to include the information sought herein as part of the allegations of the amended complaint. By so doing the need for further discovery on this point will be eliminated, thereby reducing the extent of subsequent motion pleading in this case.

### SUMMARY

Defendant's motion is denied as to branches 1, 2, 3 and 4 thereof and

granted as to branch 5; plaintiff shall within fifteen days of entry of order herein file an amended complaint in accordance with this Court's holdings on branches 3, 4 and 5 of the said motion.