**RCA GLOBAL COMMUNICATIONS, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF INTERIOR et al., Defendants.**

**Civ. A. No. 77–007.**

District Court of Guam,
Agana Division.

April 11, 1977.

Mathew Gruskin (Ferenz, Bramhall, Williams & Gruskin), Agana, Guam, for plaintiff.

David T. Wood, Asst. U. S. Atty., Agana, Guam, for defendants.

## MEMORANDUM ORDER

DUENAS, District Judge.

On February 22, 1977 Plaintiff, RCA Global Communications, Inc., hereinafter referred to as "RCA" filed a complaint for injunctive and declaratory relief against the U.S. Department of Interior, Cecil Andrus, Secretary of Interior; Emmett Rice, Acting Director, Office of Territorial Affairs; the

Government of the Trust Territory of the Pacific Islands, herein referred to as "TTPI"; Peter T. Coleman, Acting High Commissioner of the TTPI; the Government of the Northern Marianas, hereinafter referred to as "GNMI"; and Erwin D. Canham, Resident Commissioner, GNMI.

The Plaintiff later filed an amended complaint, adding William A. Klatt, General Manager of RCA for Guam and Micronesia, as a party plaintiff. The TTPI, the GNMI, and the United States have filed motions to dismiss. RCA has filed a motion for a preliminary injunction.

Since 1970 RCA has leased from the TTPI several voice circuits between Saipan and Guam in a tropospheric scatter system owned by the TTPI. RCA was authorized by the Federal Communications Commission to lease said circuits and to use them for the purpose of providing communication services between Saipan and Guam and beyond. RCA maintains an office in Saipan, has a business permit issued by the TTPI to do business in Saipan, and has been providing communication into and out of Saipan since 1970.

On March 31, 1976, Francisco C. Ada, District Administrator, Saipan, Mariana Islands, TTPI, issued an invitation for proposal to obtain the franchise to provide telephone service on the islands of Saipan, Rota and Tinian. The primary objective of the invitation was to identify a capable company to provide local telephone service to Saipan, Rota and Tinian. As of March 31, 1976 the Saipan Telephone Company was being operated by the TTPI and no telephone system existed on Rota or on Tinian.

Although the primary objective of the proposal involved local telephone service, the invitation also included the following paragraph:

Traditionally, revenue sharing arrangements exist between local and long haul common carriers. This arrangement has not yet been made for Saipan, but should be introduced at an early date to:

1) Provide the best local telephone service possible to the greatest number of people at the lowest practical cost;

2) Provide funds to supply communications service to Tinian and Rota;

3) Upgrade the transmission link between Saipan and Guam;

To be responsive, proposers should include as part of their proposal:

1) A plan for sharing of toll revenues between the Saipan Telephone Company and the connecting long haul common carrier for all calls sent or received by Saipan subscribers;

2) A plan for the handling of calls between Saipan and Guam. This could include handling by:

Long haul (International) common carrier,
"Saipan Telephone Company",
Guam Telephone Company;

3) Proposed program will share with the Government ____% of any toll revenue received as a result of toll separation agreements with connecting common carriers and ____% of toll revenue billed and retained by company as a result of calls generated to or from the proposed telephone system.

On March 24, 1976 Kent Frizell, Acting Secretary of Interior, issued a proclamation establishing in and for the Mariana Islands District of the TTPI, a new administration to take effect on April 1, 1976. Frizell further proclaimed that the Mariana Islands District would hereinafter be referred to as the "Northern Mariana Islands".

On the same day Frizell also signed Secretarial Order No. 2989 vesting executive authority for the GNMI in a United States Resident Commissioner, appointed by, and whose responsibility shall be exercised under the general supervision of, the Secretary.

The "Saipan Telephone Company" was sometime thereafter turned over to the GNMI.

The only bidder in response to the March 31, 1976 solicitation was Micronesian Telecommunications Corporation, hereinafter referred to as "MTC". On October 22, 1976

a contract was executed between GNMI and MTC granting MTC a lease and a telecommunications franchise. The franchise awarded to MTC is crucial to the issues before the Court and is as follows:

## TELECOMMUNICATIONS FRANCHISE

The Micronesian Telecommunications Corporation is hereby franchised as the Telecommunications Common Carrier Entity for the Northern Mariana Islands. The Company is granted the authority to negotiate with the duly designated common carrier entities of other jurisdictions to interconnect with world points, and further to establish, own, lease and operate facilities to provide telecommunications services for the people of the Northern Mariana Islands, on and among the islands and interconnecting the islands to provide telecommunications service to world points. For the purpose herein, "Telecommunications" means any transmission, emission or reception of signals, writings, images and sounds of intelligence of any nature by wire, radio, optical, or other electro-magnetic systems. Telecommunications services which may be provided under this franchise include telephone, telegraphic message, facsimile, data, audio and video program transmission, including switched and/or dedicated circuit networks to accommodate such services. The Franchise is awarded for a period of ten (10) years, with two (2) five (5) year renewal options if the franchisee desires and service provided is deemed satisfactory by the Government. This option to renew will be acknowledged 180 days prior to the end of the franchise. The detailed terms and conditions are outlined in the proposal and, where not inconsistent with the "Contract Agreement", are a binding part of this contract.

It appears from certain correspondence that both before and after October 22, 1976 negotiations took place between RCA and MTC with regard to overseas communications services for Saipan.

On December 29, 1976 Resident Commissioner Canham wrote a letter to Acting High Commissioner Coleman requesting the TTPI to immediately serve notice to RCA of a termination of its lease of five whole circuits in the tropospheric scatter system since the GNMI was concerned as to the progress of the negotiations and felt that the lease should be terminated so that MTC could fulfill the franchise.

On January 12, 1977 Coleman served a three months notice on RCA of the termination of the 1970 lease. The termination is to be effective April 23, 1977.

The plaintiffs primarily base the jurisdiction of this Court on the Fifth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. Sec. 1331. It is their contention that the termination of the 1970 lease and the awarding of a franchise to MTC to provide both local and allegedly overseas telephone and other communications service to the Northern Marianas amounts to a deprivation of property without due process of law.

The TTPI and the GNMI have based their motions to dismiss on the precept that this court has no jurisdiction over the TTPI or the High Commissioner or the GNMI and the Resident Commissioner.

The Mariana Islands are administered by the United States pursuant to a Trusteeship Agreement executed by the United States and the Security Council of the United Nations on April 2, 1947 and approved by the United States on July 19, 1947. Until April 1, 1976 the Northern Mariana Islands were administered by the Secretary of the Interior through the Government of the Trust Territory of the Pacific Islands. However, on April 1, 1976 a new and separate administration was organized to administer the Northern Mariana Islands. This new administration is the Government of the Northern Mariana Islands. The Government of the Northern Mariana Islands and the Resident Commissioner stand in a parallel situation to those of the Government of the Trust Territory of the Pacific Islands and the High Commissioner. See Secretarial Order No. 2989, Department of Interior.

794

Courts have held that the TTPI is not an agency of the United States nor is the High Commissioner an officer of the United States within the terms of the Administrative Procedure Act and the National Environmental Policy Act. *People of Saipan v. U.S. Dept. of Interior*, 502 F.2d 90, 9th Circuit, 1974.

The U.S. Court of Claims held in *Porter v. U. S.*, 496 F.2d 583, 204 Ct.Cl. 355 (1974) that the TTPI is not an agency of the United States for contract purposes and that it did not have jurisdiction over and action based upon the alleged breach of contract committed by TTPI. Whatever the Trust Territory is, courts have construed it to be either a foreign country or something other than a federal agency, *Porter supra*.

■ It is therefore the opinion of this Court that it has no jurisdiction over the Trust Territory of the Pacific Islands, the High Commissioner, the Government of the Northern Mariana Islands and the Resident Commissioner for acts committed in the Northern Mariana Islands and that said parties are not subject to process pursuant to Rule 4(d)(5) of the Federal Rules of Civil Procedure.

The Court is not leaving plaintiffs without a forum in which to file their action since Department of Interior Order No. 2918 which set up the Government of the Trust Territory of the Pacific Islands on December 27, 1968, established the judicial authority of the Trust Territory in the High Court of the TTPI.

The Department of Interior, its Secretary, and the Acting Director of Territorial Affairs have also filed a motion to dismiss pursuant to Rule 12(b) FRCivP or in the alternative a motion for Summary Judgment. Their motion is based in part on the failure of plaintiffs to state a claim upon which relief can be granted and upon plaintiffs' failure to join an indispensable party.

Plaintiffs are asking in their prayer for relief for this Court to One, assume jurisdiction; Two, enter a declaratory judgment that the purported franchise is either inval-id or non-exclusive and declaring that the lease between TTPI and RCA is still in effect; Three, to restrain the defendants from terminating the TTPI–RCA lease agreement and from interfering with the conduct of plaintiffs' business in the Northern Mariana Islands and the Trust Territory; and Four, to issue a Writ of Mandamus requiring defendant to adhere to the terms of the March 31, 1976 bid proposal and to rescind the notice of termination of the lease.

Under plaintiffs' First Cause of Action the defendants are alleged to have had their business permits revoked without notice or an opportunity to be heard if the franchise awarded October 22, 1976 to MTC is found to be an exclusive franchise.

■ However, the language in Article 3 of the October 22, 1976 agreement does not indicate that the franchise is exclusive. Grants of franchises and special privileges are always to be construed most strongly against the donee, and in favor of the public. *Turnpike Co. v. Illinois*, 96 U.S. 63, 24 L.Ed. 651. As a general rule a franchise will not be construed as conferring an exclusive right in the absence of an express provision to that effect. 36 Am.Jur.2d Sec. 32. Franchises, *Knoxville Water Co. v. Knoxville*, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353. Since the franchise awarded to MTC is not specifically exclusive or even close to it, it must be deemed to be non-exclusive and plaintiff's First Cause of Action must fail.

Plaintiff's Second Cause of Action alleges that the defendants' action is an attempt to create a monopoly and thus constitutes a denial of due process and equal protection. However, since the franchise is not exclusive no monopoly is created and the Second Cause of Action must fail.

The Third Cause of Action alleges that plaintiffs would have submitted a bid proposal if they had been misled into believing that the franchise being offered was other than an exclusive franchise for international communications services. Again plaintiff fails to state a claim upon which relief can be granted since the franchise awarded was non-exclusive.

Plaintiff's Fourth Cause of Action also depends upon a finding that the franchise is exclusive. Therefore, it too fails to state a proper claim.

The Fifth Cause of Action is dependent upon and realleges the first four causes of actions and therefore also fails to state a claim upon which relief can be granted.

 Moreover, plaintiffs cannot claim that the termination of the 1970 TTPI–RCA lease deprives them of a property right since said lease contains the following clause:

8. Unless otherwise agreed in writing, this agreement shall continue in operation from year to year, subject to termination by Lessee or Lessor at any time upon three (3) month's notice in writing to the other party.

Said lease was drafted by Counsel for RCA.

The United States also contends that the plaintiffs have failed to join an indispensable party, namely MTC. The case of *Texas v. Interstate Commerce Commission*, 258 U.S. 158, 42 S.Ct. 261, 66 L.Ed. 531 (1927) involved a similar situation to the one at hand. In that instance the State of Texas filed suit for a declaration that certain provisions of the Transportation Act of 1920 were unconstitutional and void and requested the Court to annul any action taken thereunder by the Railroad Labor Board (RLB) with respect to the regulation of railroad carriers in Texas, and to enjoin the RLB from taking any further action pursuant to the Act in question.

It appeared to the Court that the RLB had taken certain action pursuant to the disputed law and that numerous carriers and employees, who were not joined as defendants had adjusted their relations based on the action taken by the RLB. Consequently if the action taken by the RLB were annulled then the interests of these non-party carriers and employees would be directly and unavoidably affected without an opportunity for them to be heard. Therefore, the Court granted the defendant's motion to dismiss.

In the case at hand, plaintiffs are challenging the validity of the October 22, 1976 contract executed by MTC and GNMI. Unquestionably the whole existence of MTC is dependent upon the validity of the contract and yet MTC has not been joined as a party.

It is the finding of the Court pursuant to Rule 19(b) of FRCivP that MTC is an indispensable party to this action and as indicated by plaintiffs cannot be made a party, and that in the interest of equity and good conscience this action should be dismissed.

For all the reasons stated above the motions to dismiss by all defendants are hereby granted and the action is dismissed.

SO ORDERED.